IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

MELINDA SMITH,

    Plaintiff,

v.                                                        Civil Action No. 4:23cv95

ATLAS NORTH AMERICA, LLC

    Serve:

    Adrian Joseph Culbreath,
    Registered Agent
    120 Newsome Drive, Suite H
    Yorktown, Va.  23692

and

THYSSENKRUPP MATERIALS NORTH AMERICA, LLC.

    Serve:

    Corporation Service Company
    100 Shockoe Slip, Floor 2
    Richmond, Va.  23219

    Defendants

## COMPLAINT

Plaintiff Melinda Smith ("Smith"), by and through counsel, file this Complaint against Atlas North America, LLC ("Atlas") and ThyssenKrupp Materials North America, LLC ("ThyssenKrupp"), and in support thereof state as follows:

## PARTIES, JURISDICTION AND VENUE

1. Smith is an individual residing at 3495 Lisburne Lane, Hayes, Va. 23072

2. Defendant Atlas North America, LLC is a Virginia limited liability company with its principal location at 120 Newsome Dr, Yorktown, Virginia 23692.

3. Defendant ThyssenKrupp Materials North America, LLC., is a Delaware LLC with its principal place of business located at 22355 W. 11 Mile Rd, Southfield, MI 48033 and is a business entity authorized to transact business in Virginia.

4. This Court has subject matter jurisdiction pursuant to 28 USC 28 U.S.C. § 1331 as the claims herein arise in part for violations under The Defend Trade Secrets Act, 18 U.S.C. § 1836 and acts complained of herein occurred after May 11, 2016; the Court has supplemental jurisdiction over the state law claims under 28 USC § 1367.

5. This Court has personal jurisdiction over the defendants as Atlas is a company that is located in the Commonwealth of Virginia and conducts business within the Commonwealth; Thyssenkrupp purchased Atlas and regularly conducts business within the Commonwealth. Thyssenkrupp also reached into the Commonwealth to obtain and misappropriate the trade secrets belonging to Plaintiff in the purchase of Atlas.

6. Venue is proper in this Court pursuant to 28 USC § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims herein occurred in this District and Division.

**FACTS**

7. Smith, concerned about numerous reports of individuals who were reported missing at sea due to falling overboard from vessels of all types, including cruise ships, merchant vessels, and others, began contemplating means for the tracking and rescue people caught in such circumstances.

8. By 2015, Smith had created the elements and function of a device to assist in the tracking and rescue of individuals lost overboard (the "Invention").

9. Smith personally knew an individual, Martin Wilcox, who was an engineer and the owner of Marine Sonic Technology ("Marine Sonic"), a business specializing in the maritime industry.

10. In March of 2015, Smith met with Martin Wilcox to discuss the potential patenting and marketing of the Invention.

11. Smith knew that Wilcox had sold Marine Sonic, but when she went to meet with Wilcox at his office per his suggestion, she learned that Wilcox was employed by Atlas North America, the purchaser of Marine Sonic, and his office was located in Atlas North America's place of business.

12. At that meeting, Smith disclosed to Wilcox her Invention. Wilcox expressed interest in, and asked Smith to perform a prior art search at the United States Patent Office, giving her direction in how to conduct an initial search. Wilcox also told Smith that "they" needed to get a non-disclosure agreement drawn up quickly.

13. Smith's initial prior art search did not reveal any inventions that to her untrained eye would preclude her from being able to protect and market her invention.

14. In or around early May of 2015, Wilcox spoke with Smith via telephone and informed her that a non-disclosure agreement was being prepared for her to sign.

15. On May 20, 2015, Wilcox sent Smith an email with the Non-Disclosure Agreement, attached as Exhibit 1, to be signed by her and dropped off at his office.

16. In the May 20, 2015 email, Wilcox also informed Smith by Wilcox that Atlas would be pursuing patent protection for the Invention, naming her as inventor, and the production and sale of the Invention.

17. was which was entered into between Smith and Atlas North America, LLC and electronically signed on behalf of Atlas by Adrian Culbreath, VP Business Operations.

18. On August 12, 2015, Wilcox on behalf of Atlas sent correspondence to Eric Evans at Carnival Corporation ("Carnival"), the parent company of Carnival Cruise Line, explaining that Smith had brought "us" the Invention, providing a brief description of the Invention and purpose, and inquiring as to whether Carnival had any interest in the Invention. *See* email dated August 12, 2015, attached as Exhibit 2.

19. On June 21, 2017, Smith received a phone call from Wilcox informing her that Atlas and its parent company, Atlas Elektronik, had been acquired by ThyssenKrupp in April of 2017. Wilcox told Smith that ThyssenKrupp was very interested in pursuing the Invention, and asked Smith to provide him with personal contact information – name, address, place of employment, and other information – informing her that he needed to provide that information to ThyssenKrupp as she was to be listed as an "outside inventor" on the patent application.

20. ThyssenKrupp became a party to and/or the successor in interest to the Non-Disclosure Agreement with Smith through its acquisition of Atlas and subsequent taking and use of Smith's Invention.

21. In July of 2018, Smith received confirmation from Wilcox via email that ThyssenKrupp was pursuing patent protection for the Invention. *See* email dated July 3, 2018, attached as Exhibit 3.

22. In August of 2019, Wilcox informed Smith that ThyssenKrupp did not ". . . want us to do anything until a patent is obtained," *See* email dated August 14, 2019, attached as Exhibit 4, but that "the patent" for her disclosed Invention had indeed been filed.

23. In February of 2020, Smith was informed by Wilcox that ". . . I put both our names on the original in-house application, and it went into the [Thyssen-Krupp] patent process and they did the actual paperwork and the formal application to the USPTO" and that "they" (Thyssen-Krupp) "don't want to do anything with the [Invention] until a patent is issued." *See* email dated February 5, 2020, attached as Exhibit 5. Wilcox further explained that the application based upon Smith's invention "went into the T-K patent process and they did the actual paperwork and the formal application to the USPTO." Exh. 5.

24. Smith continued to follow up on the patent process with ThyssenKrupp through Wilcox but received no updated information. Smith continued to follow up with Wilcox as late as July, 2020. *See* email dated July 27, 2020, attached as Exhibit 6.

25. At no time was Smith provided with confirmation of when, how, in what form, and with whom as listed inventors, Thyssen-Krupp had filed the patent application based upon her disclosures to them of the Invention.

26. Concerned about the status of her Invention and the patent protection for it, and seeking further information, Smith hired Cardinal Intellectual Property ("Cardinal") to do a search for the pending application. Cardinal found no publicly available record that the patent application had been filed. *See* Patent Search Report dated August 6, 2020, attached as Exhibit 7.

27. On September 11, 2020, in an attempt to ascertain the status of her Invention and what steps Atlas and ThyssenKrupp, a letter was sent on her behalf to Rob Harmer, Esq. ("Harmer"), Intellectual Property Counsel for ThyssenKrupp North America, Inc., by William E. Johnson, Esq., seeking information about the status of the patent application. *See* letter dated September 11, 2020, attached as Exhibit 8.

28. Harmer responded on October 9, 2020 via email correspondence (attached as Exhibit 9) stating that the application had been filed and rejected, and that ThyssenKrupp abandoned the application. The letter contained no further information or copies of any of the documents associated with the patent application.

29. In response, Johnson, on behalf of Smith, sent a follow up letter requesting a copy of the patent application and all related correspondence. *See* letter dated October 20, 2020, attached as Exhibit 10.

30. Harmer's response to the October 20, 2020 letter was via email, refusing to provide any information to Smith, stating "I understand that your client may be curious, but ATLAS is not under any obligation whatsoever to share this information with Ms. Smith – regardless of what Mr. Wilcox may or may not have said previously." *See* email dated October 27, 2020, attached as Exhibit 11.

31. To date, Smith has received no information or documents related to the filing of or status of the patent application other than the correspondence from Harmer.

32. Until Harmer's letter of October 9, 2020, Smith did not know and could not reasonably have discovered that Defendants had pursued, but then abandoned for reasons that Harmer refused to disclose, thereby misappropriating Smith's trade secrets.

33. In an attempt to confirm the status of the patent application, as well as whether or not Smith had (per her communications with Wilcox) or had not been named as an inventor on the application incorporating the Invention, Smith contacted the United States Patent and Trademark Office via telephone on November 2, 2020. By law, however, the USPTO could provide only limited information as to the existence, form, content, and status of the application. During that phone call, Smith was informed that:

    a. A patent application had been filed in 2019 with the title of "Overboard Protection and Tracking System";

    b. That Martin H. Wilcox was named as an inventor on the application; and

    c. That Smith was not named as an inventor on the application.

34. Defendants have harmed Smith in that they misappropriated her trade secret invention, and used it to prepare and file a patent application that they then, without informing her or involving her in the process, abandoned.

## COUNT I: THEFT OF TRADE SECRET IN VIOLATION OF
## 18 U.S.C. § 1836

35. The allegations of Paragraphs 1–34 are incorporated as though fully repeated herein.

36. The Invention as disclosed to Defendants constituted trade secrets as evidenced, in part, by the Non-Disclosure Agreement entered into by the Parties.

37. The filing of the patent application incorporating Smith's Invention constituted a misappropriation and use of her trade secret in violation of the Federal Defend Trade Secrets Act.

38. Defendants' acts were willful and malicious.

39. Smith has been damaged as a result.

## COUNT II:  MISAPPROPRIATION OF TRADE SECRETS

## IN VIOLATION OF VA. CODE ANN. § 59.1-336 *et seq.*

40. The allegations of Paragraphs 1-39 are incorporated as though fully repeated herein.

41. The Invention as disclosed to Defendants constituted trade secrets as evidenced, in part, by the Non-Disclosure Agreement entered into by the Parties.

42. The filing of the patent application incorporating Smith's Invention constituted a misappropriation and use of her trade secret in violation of the Virginia Uniform Trade Secrets Act.

43. Defendants' actions were made in bad faith and/or were willful and malicious.

44. Smith has been damaged as a result.

## COUNT III:  BREACH OF NON-DISCLOSURE AGREEMENT

45. The allegations of Paragraphs 1-44 are incorporated as though fully repeated herein.

46. A valid and enforceable Non-Disclosure Agreement was entered into between Atlas and, subsequently and in addition to Atlas, ThyssenKrupp.

47. Through the misappropriation and use of Smith's Invention, Defendants breached the Non-Disclosure Agreement.

48. Smith has been damaged in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

49. Damages as provided for by the Federal Defend Trade Secret Act and the Virginia Uniform Trade Secrets Act, including compensatory, exemplary and punitive damages;

50. Plaintiff's actual damages;

51. The amount of Defendants' unjust enrichment;

52. All profits attained as a result of the sale of products created using confidential information;

53. Injunctive relief;

54. Pre- and post-judgment interest;

55. Attorneys fees, cost of suit and all other costs and expenses as provided for under the Defend Trade Secrets Act and the Virginia Uniform Trade Secrets Act; and

56. Other such relief as the Court may deem proper.

PLAINTIFF DEMANDS TRIAL BY JURY

Dated:  July 14, 2023

                                                   MELINDA SMITH

                                                   By :/s/ Duncan G. Byers
                                                 Of Counsel
                                                 Duncan G. Byers, Esq.
                                                 Va. Bar ID #48146
                                                 BYERS LAW
                                                 1769 Jamestown Road, Suite 120
                                                 Williamsburg, VA  23185
                                                 Telephone: (757) 317-2779
                                                 Facsimile:  (757) 231-3797
                                                 dbyers@dbyerslaw.com
                                                  *Counsel for plaintiff Melinda Smith*