UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| MELINDA SMITH,<br><br>Plaintiff,<br><br>v.<br><br>ATLAS NORTH AMERICA, LLC,<br><br>Defendant. | Civil No. 4:23cv95 |

**ORDER**

Pending before the Court is a Motion to Dismiss for Failure to State a Claim (the "Motion") brought by Defendant ATLAS NORTH AMERICA, LLC ("Defendant" or "Atlas"). ECF No. 10. For the following reasons, Defendant's Motion (ECF No. 10) is **DENIED**.

## I. BACKGROUND

When ruling on a motion to dismiss for failure to state a claim, a court must accept a complaint's well-pled factual allegations as true and draw any reasonable inferences in favor of the plaintiff. *See, e.g.*, *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012). The Court, however, is "not so bound with respect to [the complaint's] legal conclusions." *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991). Accordingly, the Court reviews the facts as alleged by Plaintiff Melinda Smith in the Complaint. *See* Compl. ¶¶ 7–34, ECF No. 1 ("Compl.").

### A. Factual Allegations

Plaintiff Melinda Smith is a Virginia resident. *Id.* ¶ 1. Defendant Atlas is a Virginia limited liability company with its principal location in Virginia. *Id.* ¶ 2. Dismissed co-defendant THYSSENKRUPP MATERIALS NORTH AMERICA, LLC is a Delaware limited liability company with its principal place of business in Michigan.[1] *Id.* ¶ 3.

Concerned about numerous reports of individuals missing at sea due to falling overboard from vessels of all types, Plaintiff Smith began contemplating means for the tracking and rescue of people caught in such circumstances. *Id.* ¶ 7. By 2015, Plaintiff had created the elements and function of a device to assist in the tracking and rescue of individuals lost overboard (the "Invention"). *Id.* ¶ 8. She personally knew an individual, Martin Wilcox, who was an engineer and the owner of Marine Sonic Technology ("Marine Sonic"), a business specializing in the maritime industry. *Id.* ¶ 9.

In March 2015, Plaintiff met with Mr. Wilcox to discuss the potential patenting and marketing of the Invention. *Id.* ¶ 10. Plaintiff knew that Mr. Wilcox had sold Marine Sonic but learned during their meeting that he was employed by Atlas, the purchaser of Marine Sonic. *Id.* ¶ 11. His office was in Atlas' place of business. *Id.* At

[1] The Court dismissed Defendant THYSSENKRUPP MATERIALS NORTH AMERICA, LLC from the case on October 18, 2023 based on Plaintiff's Motion to Dismiss (ECF No. 14) and Defendant Atlas' representation that the entity does not exist (ECF No. 12). Order, ECF No. 21. Therefore, the Court does not construe further references to "ThyssenKrupp" in the Complaint to refer to THYSSENKRUPP MATERIALS NORTH AMERICA, LLC.

the meeting, Plaintiff disclosed the Invention to Mr. Wilcox. *Id.* ¶ 12. He expressed interest in the Invention and asked Plaintiff to perform a prior art search at the United States Patent and Trademark Office ("USPTO"). *Id.* Mr. Wilcox told Plaintiff that "they" needed to get a non-disclosure agreement drawn up quickly. *Id.* Plaintiff's initial prior art search did not reveal any inventions that would preclude her from being able to protect and market the Invention. *Id.* ¶ 13.

In or around early May 2015, Mr. Wilcox spoke with Plaintiff via telephone and informed her that a non-disclosure agreement was being prepared for her to sign. *Id.* ¶ 14. On May 20, 2015, Mr. Wilcox sent Plaintiff an email with the Non-Disclosure Agreement for her signature and to be dropped off at his office *Id.* ¶ 15. He also informed her that Defendant Atlas would be pursuing patent protection for the Invention, naming her as inventor, and working on the production and sale of the Invention. *Id.* ¶ 16. Plaintiff and Atlas entered into the Non-Disclosure Agreement on May 21, 2015. *Id.* ¶ 17; Ex. 1, Compl., ECF No. 1-1 ("Non-Disclosure Agreement").

On August 12, 2015, Mr. Wilcox, on behalf of Atlas, emailed Eric Evans at Carnival Corporation ("Carnival"), the parent company of Carnival Cruise Line, explaining that Plaintiff had brought "us" the Invention. Compl. ¶ 18 (citing Ex. 2, Compl., ECF No. 1-2). He provided a brief description of the Invention and its purpose and inquired about whether Carnival had any interest in the Invention. *Id.*

On June 21, 2017, Plaintiff received a phone call from Mr. Wilcox informing her that ThyssenKrupp had acquired Atlas and Atlas' parent company, Atlas Elektronik, in April 2017. *Id.* ¶ 19. Mr. Wilcox told Plaintiff that ThyssenKrupp was

very interested in pursuing the Invention and asked Plaintiff for her personal contact information, including name, address, and place of employment. *Id.* He informed her that he needed to provide the information to ThyssenKrupp because she was to be listed as an "outside inventor" on the patent application. *Id.* ThyssenKrupp became a party to and/or the successor in interest to the Non-Disclosure Agreement with Plaintiff through its acquisition of Atlas. *Id.* ¶ 20.

In July 2018, Plaintiff received confirmation from Mr. Wilcox via email that ThyssenKrupp was pursuing patent protection for the Invention. *Id.* ¶ 21 (citing Ex. 3, Compl., ECF No. 1-3). In August 2019, Mr. Wilcox informed Plaintiff that ThyssenKrupp did not "want us to do anything until a patent is obtained," but that "the patent" for her disclosed Invention had indeed been filed. *Id.* ¶ 22 (citing Ex. 4, Compl., ECF No. 1-4). In February 2020, Mr. Wilcox informed Plaintiff that he "put both our names on the original in-house application, and it went into the [ThyssenKrupp] patent process and they did the actual paperwork and the formal application to the USPTO." *Id.* ¶ 23 (citing Ex. 5, Compl., ECF No. 1-5 ("Feb. 5, 2020 Email")). He further stated that "they" (ThyssenKrupp) "don't want to do anything with the [Invention] until a patent is issued." *Id.* (citing Feb. 5, 2020 Email). Plaintiff continued to follow up on the patent process with ThyssenKrupp through Mr. Wilcox but received no updated information. *Id.* ¶ 24. She followed up with Mr. Wilcox as late as July 2020. *Id.* (citing Ex. 6, Compl., ECF No. 1-6).

Although ThyssenKrupp had filed the patent application based on her disclosures of the Invention, Plaintiff never received any confirmation of when, how, and

in what form the patent was filed, nor of the names listed as the inventors in the patent. *Id.* ¶ 25. Concerned about the status of her Invention and the patent protection for it, and seeking further information, Plaintiff hired Cardinal Intellectual Property ("Cardinal") to do a search for the pending application. *Id.* ¶ 26. Cardinal found no publicly available record that the patent application had been filed as of August 6, 2020. *Id.* (citing Ex. 7, Compl., ECF No. 1-7 ("Patent Search Report")).

On September 11, 2020, William E. Johnson, Esq. sent a letter on Plaintiff's behalf to Rob Harmer, Esq., Intellectual Property Counsel for ThyssenKrupp North America, Inc., seeking information about the status of the patent application. *Id.* ¶ 27 (citing Ex. 8, Compl., ECF No. 1-8 ("Sept. 11, 2020 Letter")). Mr. Harmer responded on October 9, 2020 via email stating that the application had been filed and rejected and that ThyssenKrupp abandoned the application. *Id.* ¶ 28 (citing Ex. 9, Compl., ECF No. 1-9). The letter contained no further information or copies of any of the documents associated with the patent application. *Id.* On October 20, 2020, Mr. Johnson, on behalf of Plaintiff, sent a follow up letter requesting a copy of the patent application and all related correspondence. *Id.* ¶ 29 (citing Ex. 10, Compl., ECF No. 1-10)[2]. On October 27, 2020, Mr. Harmer responded by email to the October 20, 2020 letter refusing to provide any information to Plaintiff and stating, "I understand that your client may be curious, but ATLAS is not under any obligation whatsoever to share

---

[2] The Court notes that Exhibit 10 appears to be a duplicate of Exhibit 9 and may have been incorrectly uploaded.

this information with Ms. Smith – regardless of what Mr. Wilcox may or may not have said previously." *Id.* ¶ 30 (citing Ex. 11, Compl., ECF No. 1-11).

To date, Plaintiff has received no information or documents related to the filing or status of the patent application other than the correspondence from Mr. Harmer. *Id.* ¶ 31. Until Mr. Harmer's October 9, 2020 letter, Plaintiff did not know that Atlas and ThyssenKrupp had pursued and then abandoned the patent application for the Invention. *Id.* ¶ 32. In an attempt to confirm the status of the patent application and determine whether Plaintiff had been named as an inventor on the application incorporating the Invention, Plaintiff contacted the USPTO via telephone on November 2, 2020. *Id.* ¶ 33. During that phone call, Plaintiff was informed that: (1) a patent application had been filed in 2019 with the title of "Overboard Protection and Tracking System"; (2) Martin H. Wilcox was named as an inventor on the application; and (3) Plaintiff was not named as an inventor on the application. *Id.*

**B. Procedural History**

On July 14, 2023, Plaintiff Smith filed a Complaint against Defendants Atlas and THYSSENKRUPP MATERIALS NORTH AMERICA, LLC alleging three claims: (1) Theft of Trade Secrets, in violation of 18 U.S.C. § 1836; (2) Misappropriation of Trade Secrets, in violation of Va. Code Ann. § 59.1-336 *et seq.*; and (3) Breach of Non-Disclosure Agreement. ECF No. 1. On August 30, 2023, Defendant Atlas filed a Motion to Dismiss. ECF No. 10. In support of the Motion to Dismiss, Atlas argues that the Complaint must be dismissed because the claims are time barred, that Plaintiff lacks standing to assert Counts One and Two, and that Count Three should be

dismissed because Defendant did not violate the Non-Disclosure Agreement. Mem. Supp. Mot. Dismiss at 4–9[3], ECF No. 11 ("Mem. Supp."). Plaintiff filed a Response in Opposition on September 13, 2023. Resp. Opp'n, ECF No. 13 ("Resp. Opp'n"). She argues that she did not have any notice until late 2020 about the facts that form the basis of her claims and that the delays in notice were a direct result of Defendants' intentional concealment of that information from her. *Id.* at 3. She further argues that she has standing and that she properly alleged a violation of the Non-Disclosure Agreement. *Id.* at 5–8. Atlas filed a Reply on September 19, 2023. ECF No. 15.

On September 19, 2023, Plaintiff also filed a Motion to Dismiss and for Expedited Discovery. ECF No. 14. She acknowledged that Defendant THYSSENKRUPP MATERIALS NORTH AMERICA, LLC did not exist as an entity and requested its dismissal. *Id.* at 1–2, 7–8. She also requested expedited discovery to determine the correct entity that should be listed in her Complaint in lieu of the dismissed nonexistent entity. *Id.* at 2, 5–8. On October 17, 2023, Magistrate Judge Krask denied the request for expedited discovery (ECF No. 20), and on October 18, 2023, the Court granted the request to dismiss THYSSENKRUPP MATERIALS NORTH AMERICA, LLC (ECF No. 21).

With respect to the instant Motion, the Court has determined that a hearing on the Motion is unnecessary, as the issues for decision are adequately presented in the briefs. *See* E.D. Va. Local Civ. R. 7(J). The Motion is ripe for adjudication.

---

[3] All page numbers are based on the ECF-generated pagination.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to seek dismissal based on a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). An adequate claim requires more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A threadbare recitation of the "elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Although the truth of the facts alleged is assumed, and the facts are taken in the light most favorable to the plaintiff, courts are not bound by "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."

*Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotation marks omitted). Fair notice is provided by setting forth enough facts for the complaint to be "plausible on its face" and to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555, 570 (internal citations and footnote omitted). A complaint may survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely." *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)) (internal quotation marks omitted).

## III. ANALYSIS

In the Motion to Dismiss, Defendant argues that the Complaint should be dismissed because the claims are time barred, that Counts One and Two should be dismissed due to lack of standing, and that Count Three should be dismissed due to failure to state a claim. Mem. Supp. at 4–8. The Court reviews each argument in turn.

### A. The Court declines to dismiss Count One based on the statute of limitations.

#### *i. Legal Standard*

The Defend Trade Secrets Act (DTSA) permits "[a]n owner of a trade secret that is misappropriated" to "bring a civil action . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). The civil action "may not be commenced later than 3 years after the date on which the misappropriation with respect to which the action would relate is discovered or by the exercise of reasonable diligence should have been discovered."

18 U.S.C. § 1836(d). "[A] continuing misappropriation constitutes a single claim of misappropriation." *Id.*

"When a defendant raises an affirmative defense on a Rule 12(b)(6) motion to dismiss, *all* facts necessary for the Court to draw a conclusion that the claims are barred must appear on the face of the Complaint." *Healey v. Abadie*, 143 F. Supp. 3d 397, 402 (E.D. Va. 2015). At the motion to dismiss stage, a court may only dismiss claims based on the statute of limitations if the complaint "conclusively foreclose[s] a finding that the action is not time barred." *Id.* at 403. If the complaint does not contain sufficient information for a court to conclude that the plaintiff's claims are time barred by the applicable statute of limitations, the court must deny any motion to dismiss based on the statute of limitations. *Id.* at 402–03.

*ii. Analysis*

Defendant argues that Count One is time barred because Plaintiff failed to file any potential DTSA claims within the three-year limitations period following her discovery on August 14, 2019[4] that Defendant filed the patent application. Mem. Supp. at 6. Defendant also asserts that fraudulent concealment does not save her time barred claim. *Id.* at 3–5. In response, Plaintiff argues that Defendant willfully concealed the fact that the patent application did not name Plaintiff as an inventor and that even with due diligence, Plaintiff could not have known that she was not listed

[4] Defendant's memorandum in support of the Motion to Dismiss lists February 19, 2020 as the date Plaintiff discovered that Defendant filed a patent application, *see* Mem. Supp. at 5–6, and Defendant's Reply revises the date to August 14, 2019, *see* Reply at 3. The Court presumes that Defendant intended the August 14, 2019 date to represent the date that the limitations period began.

as an inventor more than three years prior to the filing of this case. Resp. Opp'n at 3–4.

As an initial matter, fraudulent concealment is not the appropriate starting point for the statute of limitations analysis. To toll a limitations period based on fraudulent concealment, "a plaintiff must demonstrate: (1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 548 (4th Cir. 2019) (internal quotation marks and citation omitted); *see also Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946) (holding that the fraudulent concealment tolling doctrine is "read into every federal statute of limitation"). The second element indicates that the fraudulent concealment test should only be applied where it is already clear from the face of the Complaint that the plaintiff otherwise failed to meet the statute of limitations. As such, the Court finds that fraudulent concealment is not the relevant analysis to start with.

Instead, the analysis should begin with the plain text of the DTSA, which provides that the three-year limitations period begins to run on the date the plaintiff *discovered* the misappropriation or *should have discovered* the misappropriation through the exercise of reasonable diligence. 18 U.S.C. § 1836(d); *see Houser v. Feldman*, 569 F. Supp. 3d 216, 226 (E.D. Pa. 2021) ("[T]he statute of limitations period under the DTSA runs for all misappropriations committed by a defendant at the time the plaintiff discovers, or should have reasonably discovered, a defendant's first

misappropriation."). Here, Plaintiff discovered the misappropriation on November 2, 2020 when USPTO informed her that the Invention's patent application did not name her as an inventor. Compl. ¶ 33. She filed the instant case on July 14, 2023—within three years of November 2, 2020. *Id.*; *see Houser*, 569 F. Supp. 3d at 224–26 (dismissing DTSA claims after finding that the plaintiff filed the complaint more than three years after he first discovered the misappropriation). Thus, the remaining issue is whether Plaintiff *should have* discovered the misappropriation prior to July 14, 2020 through the exercise of reasonable diligence.[5]

At this stage, the Court agrees with Plaintiff that she exercised reasonable diligence and could not have discovered the misappropriation at an earlier date. As alleged in the Complaint, Plaintiff created the Invention in 2015 and met with Mr. Wilcox to discuss the potential patenting and marketing of the Invention. Compl. ¶¶ 8, 10. On May 20, 2015, Mr. Wilcox informed Plaintiff that Atlas would be pursuing patent protection for the Invention, naming her as inventor, and working on the production and sale of the Invention. *Id.* ¶ 16. After ThyssenKrupp acquired Atlas, Mr. Wilcox also informed Plaintiff that ThyssenKrupp was interested in pursuing the Invention and listing her as an "outside inventor" on the patent application. *Id.* ¶ 19. On August 14, 2019, Mr. Wilcox informed Plaintiff that ThyssenKrupp did not want them to do anything until a patent is obtained but that the patent for her disclosed

[5] Defendant assumes in its brief that the statute of limitations began to run in 2019 when the patent application was filed. Mem. Supp. at 4. However, this calculation of the limitations period does not comport with the plain text of the DTSA, which provides that the limitations period begins on the date the misappropriation is *discovered* or should have been discovered. 18 U.S.C. § 1836(d).

Invention had been filed. *Id.* ¶ 22. Mr. Wilcox later informed Plaintiff on February 5, 2020 that he "put both our names on the original in-house application, and it went into the [ThyssenKrupp] patent process and they did the actual paperwork and the formal application to the USPTO." *Id.* ¶ 23 (citing Feb. 5, 2020 Email). During this time period, Plaintiff had no reason to believe that Atlas did not list her as an inventor in the patent application given these representations from Mr. Wilcox.

Plaintiff alleges that she continued to follow up on the patent process with ThyssenKrupp through Mr. Wilcox but received no updated information. *Id.* ¶ 24. This lack of response concerned Plaintiff, so she hired Cardinal to search for the pending patent application. *Id.* ¶ 26. Cardinal did not find any publicly available record that the patent application had been filed as of August 6, 2020. *Id.* (citing Patent Search Report). Plaintiff then retained an attorney, Mr. Johnson, who sent a letter to Mr. Harmer seeking information on the status of the patent application. *Id.* ¶ 27 (citing Sept. 11, 2020 Letter). Mr. Harmer responded that the application had been filed and rejected and that ThyssenKrupp abandoned the application. *Id.* ¶ 28. In response to Plaintiff's request for a copy of the patent application and all related correspondence, Mr. Harmer refused to provide any information to Plaintiff. *Id.* ¶¶ 29–30. Plaintiff received no other information from Atlas regarding the patent application. Finally, on November 2, 2020, Plaintiff contacted the USPTO, which informed her that the patent application did not list her as an inventor. *Id.* ¶ 33.

Based on the assurances Plaintiff received from Mr. Wilcox that she would be listed as an inventor on the patent application, her attempts to communicate with

Mr. Wilcox, her hiring of Cardinal to perform a patent application search, her retainment of an attorney to inquire about the patent application's status, Mr. Harmer's refusal to provide information on the patent application, and her phone call to USPTO, the Court declines to find that Plaintiff should have discovered the misappropriation at an earlier date through the reasonable exercise of due diligence. In fact, the allegations in the Complaint suggest that Plaintiff exercised significant due diligence in her attempts to discover the status and contents of the patent application. The Court further agrees with Plaintiff's assertion that she could not have discovered the misappropriation earlier because provisional patent applications are never made available to the public and non-provisional patent applications are not published until eighteen months after the filing date. *See* 35 U.S.C. § 122(b)(1)(A), (2)(A)(iii). Given that Cardinal, a professional IP services company, could not even find the patent application on August 6, 2020, the Court finds it likely that the patent application had not been published at that point in time. *See* Patent Search Report; *see also* Feb. 5, 2020 Email at 1 ("[A]s far as I know [the patent] has not even been published by the Patent Office."). Thus, without Mr. Wilcox or Mr. Harmer's cooperation, Plaintiff at the very least could not have discovered the misappropriation through the exercise of reasonable due diligence prior to August 6, 2020. Because Plaintiff filed her lawsuit on July 14, 2023, she is within the three-year statute of limitations.[6] As such, the Court declines to dismiss Count One based on the statute of limitations.

[6] Given that Plaintiff filed her lawsuit within the three-year statute of limitations, the Court need not analyze whether Defendant engaged in fraudulent concealment so as to prevent Plaintiff from filing the lawsuit within the limitations period.

**B. The Court declines to dismiss Count Two based on the statute of limitations.**

*i. Legal Standard*

The Virginia Uniform Trade Secrets Act (VUTSA) provides that "[a]n action for misappropriation shall be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." Va. Code § 59.1-340; *Datatel, Inc. v. Rose & Tuck, LLC*, No. 05cv495, 2005 WL 1668020, at *10 (E.D. Va. June 17, 2005). This statute of limitations provision is materially identical to the DTSA. *See* 18 U.S.C. § 1836(d) (providing for a three-year statute of limitations "after the date on which the misappropriation with respect to which the action would relate is discovered or by the exercise of reasonable diligence should have been discovered").

*ii. Analysis*

For the same reasons discussed in the prior section, the Court finds that it cannot conclusively determine that Count Two is time barred based on the Complaint alone. *See Abadie*, 143 F. Supp. 3d at 402–03 (requiring the complaint to conclusively foreclose a finding that the action is not time barred in order to dismiss a claim based on the statute of limitations at the Rule 12(b)(6) stage). As such, the Court declines to dismiss Count Two.

**C. Plaintiff has standing to assert misappropriation of trade secrets in Counts One and Two.**

*i. Legal Standard*

The DTSA permits "[a]n owner of a trade secret that is misappropriated" to "bring a civil action . . . if the trade secret is related to a product or service used in, or

intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b). To state a misappropriation claim under the DTSA, a plaintiff must allege "(1) the existence of a trade secret, (2) the trade secret's misappropriation, and (3) that the trade secret implicates interstate or foreign commerce." *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 141 (4th Cir. 2023) (citing *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021)). The DTSA defines a trade secret as "financial, business, scientific, technical, economic, or engineering information, including . . . program devices, . . . designs, [or] prototypes," where the "owner thereof has taken reasonable measures to keep such information secret[,] and the information derives independent economic value, actual or potential, . . . from not being generally known." 18 U.S.C. § 1839(3).

VUTSA is the analogous state law that "protect[s] the owner of a trade secret from another's misuse of that secret." *MicroStrategy Inc. v. Li*, 601 S.E.2d 580, 588 (Va. 2004). To state a misappropriation claim under the VUTSA, a plaintiff must allege "the existence of a 'trade secret' and its 'misappropriation' by the defendant." *Id.* VUTSA defines "trade secret" as follows:

> "Trade secret" means information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> 1. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>
> 2. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Va. Code § 59.1-336.

*ii. Analysis*

As discussed above, both the DTSA and VUTSA require alleging the existence of a trade secret. Courts have generally held that "publication of information in a patent application eliminates any trade secrecy." *Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020). Defendant relies on this principle to argue that Counts One and Two should be dismissed because the patent application extinguished the information's status as a trade secret and cites to *Attia* in support. Mem. Supp. at 7. The Court does not find this argument persuasive and declines to dismiss Counts One and Two on this basis.

Although publication of information in a patent application typically eliminates any trade secrecy, the Court finds this principle inapplicable here because Plaintiff alleges that the filing of the patent application itself qualifies as misappropriation of her trade secret. The cases that Defendant cites to in support of its position are cases where the patent application's publication, which eliminated any trade secrecy, occurred prior to, and separate from, the alleged misappropriation. In *Attia*, the Ninth Circuit affirmed the district court's dismissal of the plaintiff's DTSA claim. 983 F.3d at 425–26. The plaintiff had alleged that Google violated the DTSA by excluding the plaintiff from a project that used the plaintiff's trade secret to create a new venture. *Id.* at 423. The Ninth Circuit found that the prior publication of a patent application containing the alleged trade secret with the plaintiff's approval extinguished the information's status as a trade secret. *Id.* at 424–26. In reaching this decision, the Ninth Circuit specifically distinguished *Attia* from *Syntex Ophthalmics,*

*Inc. v. Tsuetaki*, 701 F.2d 677 (7th Cir. 1983). *Id.* at 426–27. In *Syntex Ophthalmics*, the Seventh Circuit stated that "a wrongdoer who has made an unlawful disclosure of another's trade secrets cannot assert that publication to escape the protection of trade secret law." 701 F.2d at 683. The *Syntex Ophthalmics* plaintiff had alleged that the defendants filed a patent application of the plaintiff's trade secrets without the plaintiff's consent. *Id.* at 680–81. The Seventh Circuit rejected the defendants' argument that the "wrongful patent application of [the plaintiff's] trade secrets deprives [the plaintiff] of its trade secret protection and permits [defendants] to use those secrets," because it would have "permit[ted] [the defendants] to profit from their own wrong." *Id.* at 683. Thus, the key difference between *Attia* and *Syntex Ophthalmics* is whether the patent application that publicized the trade secret was itself part of the alleged misappropriation. *See id.*; *Attia*, 983 F.3d at 426–27.

Here, Plaintiff alleges that Defendant filed the patent application for the Invention without listing her as an inventor and thereby misappropriated her trade secret. Compl. ¶¶ 36, 37, 41, 42. Because Defendant filed the patent application without Plaintiff's approval, the Court finds that this case is more akin to *Syntex Ophthalmics* and that the patent application does not bar Plaintiff's DTSA and VUTSA claims. To hold otherwise would allow Defendant to benefit from its own misconduct. *See Versata Software, Inc. v. Configit A/S*, No. 20cv09019, 2021 WL 5536287, at *8 (C.D. Cal. Sept. 10, 2021) ("[T]he dismissal of the [DTSA] claim based on Defendant's own alleged improper publication would circumvent the rule that a wrongdoer who publishes trade secrets cannot rely on that publication to avoid liability."). The fact

that Plaintiff was aware of the patent application does not save this defense. Plaintiff alleged that she consented to the patent application based on representations that Defendant would list her as an inventor. Compl. ¶¶ 16, 19. The omission of Plaintiff's name in the patent application means that Plaintiff did not consent to the patent application as filed and forms the very basis of her DTSA and VUTSA claims. *See Versata Software*, 2021 WL 5536287, at *8 (denying motion to dismiss DTSA claim based on patent publication where the defendant published two patents using plaintiffs' trade secrets)

Defendant cites to other cases that are distinguishable from this case on the same basis as *Attia*. *See Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1355–56 (Fed. Cir. 2009) (finding that the publication of a foreign patent unrelated to the alleged misappropriation defeats the information's status as a trade secret); *Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd.*, 909 F. Supp. 1353, 1360 (C.D. Cal. 1995) (same with respect to a domestic patent); *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 569, 575 (E.D. Va. 2004) (finding that certain patents cannot be deemed trade secrets because they are public). Unlike the cited cases, in this case, the filing of the patent application, which resulted in the eventual publication of the trade secret, is itself the alleged misappropriation.

Furthermore, the Court notes that *Stutz Motor Car of America, Inc. v. Reebok International, Ltd.* supports the proposition that any misappropriation that occurred prior to the publication of a patent application is still actionable because the information at the time of the misappropriation could still qualify as a trade secret. *See*

909 F. Supp. at 1360 ("[A]s plaintiff's trade secret was extinguished in September 1986 with the issuance of the '099 Patent, [defendant] could only be liable on plaintiff's trade secret claims for products incorporating the trade secret that were sold by defendant prior to the issuance date of the patent."). Thus, even in taking the view that the publication of the patent application extinguished any trade secret status, the alleged misappropriation—the filing of the patent application—occurred before any trade secret was publicized. *See* 35 U.S.C. §§ 122(b)(1)(A), (b)(2)(A)(iii) (providing that non-provisional patent applications are not published until 18 months after the earliest filing date and that provisional patent applications are never published). For these reasons, the Court declines to dismiss Counts One and Two based on the argument that the patent application extinguished any trade secret.

### D. The Court declines to dismiss Count Three based on the statute of limitations.

Next, Defendant argues that Plaintiff failed to file her breach of contract claim within the five-year statute of limitations. Mem. Supp. at 6–7. As an initial matter, Defendant's citation to the statute of limitations for a breach of contract claim under the Uniform Computer Information Transactions Act ("UCITA") does not seem to be relevant to Plaintiff's argument that Defendant violated the terms of the Non-Disclosure Agreement. *Id.* at 6 (citing to Va. Code § 59.1-508.5(a)); *see Smith v. Interactive Fin. Mktg. Grp., LLC*, No. CL08-5950, 2009 WL 7388863, at *7 (Va. Cir. Ct. July 21, 2009) ("The UCITA is designed to protect individuals involved in computer information transactions, such as agreements to create, transfer, modify, or lease computer information."). However, Defendant's argument is not fatally flawed merely

because Defendant cited to the incorrect statute. Both parties agree in their respective briefs that a five-year statute of limitations applies to the breach of contract claim. Mem. Supp. at 6; Resp. Opp'n at 5. The Court finds that Defendant's argument with respect to the statute of limitations is more properly asserted under Virginia Code Section 8.01-246(2) and reviews Defendant's argument under this provision.

Virginia Code Section 8.01-246(2) provides for a five-year statute of limitations for a breach of a written contract claim. Va. Code § 8.01-246(2); *see Manotas v. Ocwen Loan Servicing, LLC*, 794 F. App'x 259, 264–65 (4th Cir. 2019). "[A] right of action on a breach of contract claim generally accrues 'when the breach of contract occurs.'" *Kerns v. Wells Fargo Bank, N.A.*, 818 S.E.2d 779, 783 (Va. 2018) (quoting Va. Code § 8.01-230); *see also Informatics Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 416–17 (E.D. Va. 2011) (finding that the limitations period for a breach of contract claim based on the alleged disclosure of proprietary information began at least on the date that the patent application was filed); *State Analysis, Inc. v. Am. Fin. Servs. Ass'n*, 621 F. Supp. 2d 309, 321 (E.D. Va. 2009) (accepting that the limitations period for the breach of a non-compete agreement under Virginia law began on the date defendant started working for a competitor). Here, the breach in question is the disclosure of Plaintiff's Invention in the patent application to the USPTO without listing Plaintiff as an inventor. *See* Non-Disclosure Agreement ¶¶ 2.2, 2.3 (requiring the parties to prevent disclosure of proprietary information, subject to certain exceptions). Defendant asserts that the five-year limitations period began to run on July 3, 2018, the date Mr. Wilcox informed Plaintiff that ThyssenKrupp was pursuing

patent protection for the invention. Mem. Supp. at 7. Plaintiff argues that Defendant breached the Non-Disclosure Agreement by filing the patent application in 2019. Resp. Opp'n at 5; *see* Compl. ¶¶ 37, 47. Because the right of action accrues when the breach of contract occurs, the limitations period began when Defendant filed the patent application without naming Plaintiff as an inventor, not when Mr. Wilcox informed Plaintiff that ThyssenKrupp was pursuing patent protection. Although Defendant may have already decided to file the patent application without naming Plaintiff as an inventor by July 3, 2018, the breach itself did not occur until the patent application was actually filed, which resulted in disclosure. To the extent that Defendant intended to cite to Virginia Code Section 8.01-246(2) for the five-year statute of limitations, the Court agrees with Plaintiff's position that the five-year limitations period began in 2019 with the filing of the patent application. Resp. Opp'n at 5.

Additionally, Defendant's citation to *Houser* is not persuasive. Mem. Supp. at 7. First, Plaintiff argues, and the Court agrees, that the initial breach is the filing of the patent application incorporating Defendant's Invention without listing her as an inventor. *See* Compl. ¶¶ 37, 42, 47. She does not allege that any act prior to the filing of the patent application breached the Non-Disclosure Agreement. Second, Defendant's citation to *Houser* conflates the statute of limitations under the DTSA with the statute of limitations for a breach of contract claim under Virginia law. *See Houser*, 569 F. Supp. 3d at 224–26 (stating that discovery of the first misappropriation or the time when plaintiff should have reasonably discovered the first misappropriation triggers the statute of limitations under the DTSA). As discussed earlier in this

section, the right of action for a breach of contract claim accrues at the time of the initial breach, which in this case is the filing of the patent application for the Invention without naming Defendant as an inventor. The Court thus declines to dismiss Count Three based on the statute of limitations.

**E. Plaintiff properly alleged a breach of the Non-Disclosure Agreement.**

*i. Legal Standard*

Under Virginia law, a breach of contract claim requires "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *W. Insulation, LP v. Moore*, 316 F. App'x 291, 297 (4th Cir. 2009) (quoting *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)) (internal quotation marks omitted).

*ii. Analysis*

Defendant argues that Count Three should be dismissed for failure to state a claim. The cursory arguments that Defendant raises at various points in its briefs are that (1) Plaintiff agreed to allow Defendant to pursue her patent application; (2) the information in the patent application is now part of the public domain and thus not protected; and (3) Plaintiff has not alleged that the Invention is "Proprietary Information" and covered by the Non-Disclosure Agreement. Mem. Supp. at 8–9; Reply at 5. The Court reviews each argument in turn.

First, Defendant argues that Count Three fails because Plaintiff agreed to allow Defendant to pursue her patent application. Mem. Supp. at 8. This argument plainly fails. The Complaint alleges that Plaintiff allowed Defendant to pursue her

patent application based on Mr. Wilcox's representation that she would be listed as an "outside inventor" on the patent application. Compl. ¶¶ 10, 12, 16, 19. As noted in the Response in Opposition, the failure to list Plaintiff as an inventor forms "the bedrock element" of her claims. Resp. Opp'n at 7. Because Defendant is alleged to have subsequently filed a patent application *without* listing Plaintiff as an inventor, Defendant did not have Plaintiff's permission to pursue the patent application as filed.

Second, Defendant argues that the information in the patent application is not protected because the patent application is now part of the public domain. Mem. Supp. at 8. Section 2.3(a) of the Non-Disclosure Agreement provides that "neither Party shall be liable for disclosure or use of any Proprietary Information received from the other Party, if the Information was: (a) In the public domain at the time it was disclosed, or thereafter entered the public domain *through no fault of the receiving Party*[.]" Non-Disclosure Agreement ¶ 2.3(a) (emphasis added). However, the Complaint alleges that the patent application entered the public domain because Defendant filed the patent application without listing Plaintiff as an inventor—and thus without Plaintiff's permission. Compl. ¶¶ 16, 19, 25, 33. As discussed in Section III(C), this Court declines to adopt a position that would allow a defendant's wrongful publication of a patent application to serve as a defense to any claims arising out of that wrongful publication. *See Syntex Ophthalmics*, 701 F.2d at 683.

Finally, Defendant argues that Plaintiff's claim must fail because she has not alleged that the Invention qualifies as "Proprietary Information" and thus within the purview of the Non-Disclosure Agreement. Mem. Supp. at 8–9. This issue is a closer

call, and the parties only address the issue in a cursory manner or completely ignore it in their briefs. Section 2.1 of the Non-Disclosure Agreement provides that "Proprietary Information" refers to:

> all documents, data, and information (i) that are designated by the disclosing Party, in writing, or by an appropriate stamp or legend, to be non-public and of a proprietary or confidential nature, or (ii) that are orally submitted and identified as proprietary by the disclosing party, provided the disclosing Party notifies the receiving Party, in writing, specifically identifying any such Proprietary Information so orally submitted within thirty (30) days of the oral disclosure.

Non-Disclosure Agreement ¶ 2.1. The Complaint alleges that Mr. Wilcox told Plaintiff that "they" needed get a non-disclosure agreement drawn up quickly after Plaintiff disclosed her Invention at a meeting to discuss the potential patenting and marketing of the Invention. Compl. ¶¶ 10, 12. The Complaint further alleges that through the misappropriation and use of Plaintiff's Invention, Defendant breached the Non-Disclosure Agreement. *Id.* ¶ 47. Viewing the facts in the light most favorable to Plaintiff, and drawing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has alleged enough information for the Court to infer that the Invention qualifies as "Proprietary Information." Thus, the Court declines to dismiss Count Three at this stage of the proceedings. However, the Court anticipates that evidence of writing, or an appropriate stamp or legend, identifying the Invention as Proprietary Information, as required under Section 2.1 of the Non-Disclosure Agreement, may be an important factor in determining whether this claim survives later stages of the proceedings.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 10) is **DENIED**. The Clerk is **REQUESTED** to forward a copy of this Order to counsel of record for all parties.

**IT IS SO ORDERED**.

/s/
Arenda L. Wright Allen
United States District Judge

February 26, 2024
Norfolk, Virginia