Approved by the Supreme Court of Virginia
January 6, 2021

## LEGAL ETHICS OPINION 1890. COMMUNICATIONS WITH REPRESENTED PERSONS (COMPENDIUM OPINION)

In this compendium opinion, the Committee addresses numerous issues that have been raised in past legal ethics opinions regarding the application of Rule 4.2 of the Virginia Rules of Professional Conduct, formerly DR 7-103(A)(1) of the Virginia Code of Professional Responsibility. Although the rule on its face seems simple and straightforward, many issues arise in its application.

Rule 4.2 of the Virginia Rules of Professional Conduct states that:

> [i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Prior to January 1, 2000, the "no-contact rule" was embodied in DR 7-103(A)(1) of the former Virginia Code of Professional Responsibility which stated:

> During the course of his representation of a client a lawyer shall not communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

The commentary to Rule 4.2 provides guidance for interpreting the scope and meaning of the Rule. *Zaug v. Virginia State Bar,* 285 Va. 457, 462, 737 S.E.2d 914 (2013). In various places throughout this opinion, the rule is described as the "no-contact rule" or simply "the rule." Throughout this opinion "communicate directly" means to communicate *ex parte* with a represented person, that is, without the knowledge or consent of the lawyer representing that person. The term "represented person" means a person represented by counsel. LEO means "legal ethics opinion." The Committee addresses these points in the opinion:

1. The rule applies even if the represented person initiates or consents to an *ex parte* communication.
2. The rule applies only if the communication is about the subject of the representation in the same matter.
3. The rule applies only if the lawyer actually knows that the person is represented by counsel.
4. The rule applies even if the communicating lawyer is self-represented.
5. Represented persons may communicate directly with each other regarding the subject of the representation, but the lawyer may not use the client to circumvent Rule 4.2.
6. A lawyer may not use an investigator or third party to communicate directly with a represented person.
7. Government lawyers involved in criminal and certain civil investigations may be "authorized by law" to have *ex parte* investigative contacts with represented persons.
8. The rule does not apply to communications with former constituents of a represented organization.
9. The fact that an organization has in house or general counsel does not prohibit another lawyer from communicating directly with constituents of the organization, and the fact that an organization has outside counsel in a particular matter does not prohibit another lawyer from communicating directly with in-house counsel for the organization.
10. Plaintiff's counsel generally may communicate directly with an insurance company's employee/adjuster after the insurance company has assigned the case to defense counsel.
11. A lawyer may communicate directly with a represented person if that person is seeking a "second opinion" or replacement counsel.
12. The rule permits communications that are "authorized by law."

13. A lawyer's inability to communicate with an uncooperative opposing counsel or reasonable belief that opposing counsel has withheld or failed to communicate settlement offers is not a basis for direct communication with a represented adversary.

The purpose of the no-contact rule is to protect a represented person from "the danger of being 'tricked' into giving his case away by opposing counsel's artfully crafted questions," *United States v. Jamil*, 707 F.2d 638, 646 (2d Cir. 1983), and to help prevent opposing counsel from "driving a wedge between the opposing attorney and that attorney's client." *Polycast Tech. Corp. v. Uniroyal, Inc.*, 129 F.R.D. 621, 625 (S.D.N.Y. 1990). The presence of a person's lawyer "theoretically neutralizes" any undue influence or encroachment by opposing counsel. *Univ. Patents, Inc. v. Kligman*, 737 F. Supp. 325, 327 (E.D. Pa. 1990)

Authorities recognize that the no-contact rule contributes to the proper functioning of the legal system by (1) preserving the integrity of the attorney-client relationship; (2) protecting the client from the uncounseled disclosure of privileged or other damaging information relating to the representation; (3) facilitating the settlement of disputes by channeling them through dispassionate experts; (4) maintaining a lawyer's ability to monitor the case and effectively represent the client; and (5) providing parties with the rule that most would choose to follow anyway. *Grievance Comm. for Southern Dist. New York v. Simels*, 48 F.3d 640, 647 (2d. Cir. 1995); *Richards v. Holsum Bakery, Inc.*, 2009 BL 240348 (D. Ariz. Nov. 5, 2009); *Am. Plastic Equip., Inc. v. Toytrackerz, LLC*, 2009 BL 66761 (D. Kan. Mar. 31, 2009); *Lobato v. Ford*, 2007 BL 295553, No. 1:05-cv-01437-LTB-CBS (D. Colo. Nov. 9, 2007); ABA Formal Ethics Op. 95-396, at 4; Model Rules R. 4.2 cmt. 1. *See also* Comments [8] and [9] to Va. Rule 4.2 ("concerns regarding the need to protect uncounseled persons against the wiles of opposing counsel and preserving the attorney-client relationship").

Rule 4.2 is a "bright line" rule. As the Supreme Court of Virginia noted in *Zaug v. Virginia State Bar*, 285 Va. 457, 737 S.E.2d 914 (2013):

> We agree with the State Bar that attorneys must understand that they are ethically prohibited from communicating about the subject of representation with a person represented by another attorney unless they have that attorney's consent or are authorized by law to do so. The Rule categorically and unambiguously forbids an attorney from initiating such communications and requires an attorney to disengage from such communications when they are initiated by others.

*Zaug, supra*, 285 Va. At 465. For the Rule to apply, three elements must be established:

> (1) that the attorney knew that he or she was communicating with a person represented by another lawyer; (2) that the communication was about the subject of the representation; and (3) that the attorney (a) did not have the consent of the lawyer representing the person and (b) was not otherwise authorized by law to engage in the communication. While the first two facts may occur in any order, both must occur before an attorney violates the Rule.

*Zaug, supra,* 285 at 463.

1. *The Rule Applies Even if the Represented Person Initiates or Consents to an Ex Parte Communication.*

Comment [3] to Rule 4.2 states:

> The Rule applies even though the represented person initiates or consents to the communication. A lawyer must immediately terminate communication with a person if, after commencing communication, the lawyer learns that the person is one with whom communication is not permitted by this Rule.

As the Supreme Court of Virginia explained in *Zaug*, "immediately" does not mean "instantaneously." If a represented person contacts opposing counsel by telephone, for example, counsel must have an opportunity to ascertain the identity of the caller and to disengage politely from the communication, advise the

represented person that the lawyer cannot speak with him directly about his case and should advise the represented person that he should speak with his lawyer.

2. *The Rule Applies Only if the Communication is About the Subject of the Representation in the Same Matter*.

To trigger Rule 4.2 the communication must be about the subject of the representation—i.e., the lawyer's representation of his or her client. *Zaug, supra*, 285 Va. at 463; ABA Formal Op. 95-396 at 12.

Comment [4] to Rule 4.2 explains:

> This Rule does not prohibit communication with a represented person, or an employee or agent of a represented person, concerning matters outside the representation. For example, the existence of a controversy between an organization and a private party, or between two organizations, does not prohibit a lawyer for either from communicating with nonlawyer representatives of the other regarding a separate matter.

For example, the Standing Committee on Legal Ethics opined in Legal Ethics Opinion 1527 (1993) that a lawyer/shareholder cannot communicate with officers or directors of a represented corporation regarding sale of lawyer's stock in the corporation if the stock sale is the subject of the lawsuit lawyer filed *pro se* against the corporation.

The Rule applies to *ex parte* communications with represented persons even if the subject matter of the representation is transactional or not the subject of litigation. LEO 1390 (1989). Comment [8] to Rule 4.2 states:

> This Rule covers any person, whether or not a party to a formal proceeding, who is represented by counsel concerning the matter in question. Neither the need to protect uncounseled persons against being taken advantage of by opposing counsel nor the importance of preserving the client-attorney relationship is limited to those circumstances where the represented person is a party to an adjudicative or other formal proceeding. The interests sought to be protected by the Rule may equally well be involved when litigation is merely under consideration, even though it has not actually been instituted, and the persons who are potentially parties to the litigation have retained counsel with respect to the matter in dispute.

The Rule limits communications with represented persons only when the person is represented "in the matter," so communication with a represented person about a different "matter" than the one in which the person is represented is permissible even if the communication involves facts that also relate to the matter in which the person is represented. For example, when a guardian *ad litem* represents a child in a civil matter, criminal prosecutors may communicate with the child in a related criminal matter in which the child is the victim, even if the communication involves subject matter related to a pending or contemplated civil proceeding involving the child. LEO 1870 (2013). A lawyer who represents a client in a civil matter may likewise communicate with a defendant who is represented in a related criminal matter unless and until the lawyer has notice that the defendant is represented by counsel in the civil matter as well. *See also* New York State Bar Association Ethics Opinion 904 (concluding that criminal investigation and civil restitution claim are "two related matters rather than a single unitary matter" for purposes of Rule 4.2).

3. *The Rule Applies Only if the Lawyer Actually Knows that the Person is Represented by Counsel*.

As the Supreme Court of Virginia explained in *Zaug v. Virginia State Bar,* a lawyer must *know* that she is speaking with a represented person. As used in Rule 4.2, the term "knows" denotes actual knowledge of the fact in question. Part 6, § II ("Terminology"). However, "[a] person's knowledge may be inferred from circumstances." For example, if a case concludes with a final order, may a lawyer thereafter communicate directly with a person previously represented by counsel during trial, during the time within which an appeal could be taken? In LEO 1389 (1990), the Committee concluded that a lawyer cannot presume that a

final decree of divorce terminated the opposing party's relationship with his attorney since matters involving support, custody and visitation are often revisited by the courts:

> The Committee believes it would not be improper for an attorney to make direct contact with a previously represented party, following a final Order in that prior litigation, (1) where the attorney knows that the representation has ended through discharge by the client or withdrawal by the attorney, or (2) where, as permitted by DR:7-103(A)(1), the attorney is authorized by law to do so. It is the Committee's opinion that, absent such knowledge or leave of court, it would be improper for an attorney to communicate on the subject of the prior litigation with the previously represented party, irrespective of the substance of the litigation.

The Committee also stated that if the lawyer is without knowledge or uncertain as to whether the adverse party is represented, it would not be improper to communicate directly with that person for the sole purpose of securing information as to their current representation.

The Committee has opined that it is improper for an attorney to send a letter to the opposing party concerning judgment matters during the appeal period following entry of a general district court judgment when the opposing party had been represented by counsel at trial, even though no appeal had yet been filed nor had the opposing party's attorney indicated that any appeal would be filed. LEO 963 (1987).

4. *The Rule Applies Even if the Communicating Lawyer is Self-represented.*

Rule 4.2 prohibits a self-represented lawyer from directly contacting a represented person. *See* LEO 1527 (1993) ("Additionally, the committee is of the opinion that neither the fact that the attorney/shareholder is representing himself nor the claim that the corporation's directors are not receiving accurate information about the nature of the attorney/shareholder's claim would constitute an exception to DR:7-103(A)(1)."). Further, the Supreme Court of Virginia has held that a lawyer cannot avoid the duties and obligations under the Rules of Professional Conduct on the basis that the lawyer is representing himself rather than another. In *Barrett v. Virginia State Bar*, 272 Va. 260, 634 S.E.2d 341 (2006) the Court ruled:

> Rules of statutory construction provide that language should not be given a literal interpretation if doing so would result in a manifest absurdity. *Crawford v. Haddock*, 270 Va. 524, 528, 621 S.E.2d 127, 129 (2005). Applying these Rules in the manner Barrett suggests would result in such an absurdity. The Rules of Professional Conduct are designed to insure the integrity and fairness of the legal process. It would be a manifest absurdity and a distortion of these Rules if a lawyer representing himself commits an act that violates the Rules but is able to escape accountability for such violation solely because the lawyer is representing himself. [Citations omitted.]
>
> Furthermore, an attorney who represents himself in a proceeding acts as both lawyer and client. He takes some actions as an attorney, such as filing pleadings, making motions, and examining witnesses, and undertakes others as a client, such as providing testimonial or documentary evidence. *See In re Glass*, 309 Or. 218, 784 P.2d 1094, 1097 (1990) (lawyer appearing in proceeding *pro se* is own client); *In re Morton Allan Segall*, 117 Ill.2d 1, 109 Ill.Dec. 149, 509 N.E.2d 988, 990 (1987) ("attorney who is himself a party to the litigation represents himself when he contacts an opposing party"); *Pinsky v. Statewide Grievance Committee*, 216 Conn. 228, 578 A.2d 1075, 1079 (1990) (restriction on attorneys contacting represented parties limited to instances where attorney is representing client, not where attorney represents himself).
>
> The three Rules at issue here address acts Barrett took while functioning as an attorney and thus the three-judge panel correctly held that such acts are subject to disciplinary action.

*Barrett, supra*, 272 Va. at 345. *But see Barrett v. Virginia State Bar,* 269 Va. 583, 611 S.E.2d 375 (2005) (holding that Rule 4.3 (b)'s prohibition against giving legal advice does not apply to *pro se* lawyer in

divorce proceedings against his unrepresented wife).

*5. Represented Persons May Communicate Directly With Each Other Regarding the Subject of the Representation, but the Lawyer May Not Use the Client to Circumvent Rule 4.2.*

Although their lawyer may advise against it, a represented party may communicate directly with a represented adversary. *See* Comment [4] to Rule 4.2. However, a lawyer may not use a client or a third party to circumvent Rule 4.2 by telling the client or third party what to say or "scripting" the communication with the represented adversary. Rule 8.4(a) (a lawyer may not violate a rule of conduct through the actions of another). *See also* LEO 1802 (2010) (It would be unethical for a lawyer in a civil matter to advise a client to use lawful undisclosed recording to communicate with a person the lawyer knows is represented by counsel.); LEO 1755 (2001) ("Thus, while a party is free on his own initiative to contact the opposing party, a lawyer may not avoid the dictate of Rule 4.2 by directing his client to make contact with the opposing party."); LEO 233 (1974) (It is improper for an attorney to indirectly communicate with a party adverse to his client giving specific instructions to his client as to what communications to make, unless counsel for the adverse party agrees to such communication.).

*6. A Lawyer May Not Use an Investigator or Another Third Party to Communicate Directly with a Represented Person.*

In some situations, it may be necessary to determine if a nonlawyer or investigator's contact with a represented person can be imputed to a lawyer supervising or responsible for an investigation. There are two ethical considerations. First, a lawyer cannot violate or attempt to violate a rule of conduct through the agency of another. Rule 8.4 (a). Second, a lawyer having direct supervisory authority over a non-lawyer agent may be responsible for conduct committed by that agent, if the rules of conduct would have been violated had the lawyer engaged in the conduct; and, the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or, the lawyer knows or should have known of the conduct at a time when its consequences could be avoided or mitigated but fails to take remedial action. Rule 5.3.

In Legal Ethics Opinion 1755 (2001), the Committee noted that Rule 8.4(a) prohibits an attorney from violating Rule 4.2 through the acts of others. Consistent with this precept, ABA Formal Legal Ethics Op. 95-396 (1995), in its analysis of an attorney's use of investigators, states as follows:

> Since a lawyer is barred under Rule 4.2 from communicating with a represented party about the subject matter of the representation, she may not circumvent the Rule by sending an investigator to do on her behalf that which she is herself forbidden to do. [Footnote omitted.] Whether in a civil or a criminal matter, if the investigator acts as the lawyer's "alter-ego," the lawyer is ethically responsible for the investigator's conduct.

*See also United States v. Smallwood*, 365 F.Supp.2d 689, 696 (E.D. Va. 2005) ("[W]hat a lawyer may not ethically do, his investigators and other assistants may not ethically do in the lawyer's stead.")

*7. Government Lawyers Involved in Criminal and Certain Civil Investigations May Be "Authorized By Law" to Have Ex Parte Investigative Contacts with Represented Persons.*

Generally, prosecutors, government agents, and informants may communicate with represented criminal suspects in a non-custodial setting up until indictment, information or when the represented person's Sixth Amendment right to counsel would attach. *See United States v. Balter*, 91 F.3d 427 (3d Cir. 1996) (agreeing with other federal circuits, except Second Circuit, that pre-indictment non-custodial interrogations are covered by "authorized by law" exception). The courts have long recognized the legitimacy of undercover operations, even when they involve the investigation of individuals who keep an attorney on retainer. *United States v. Lemonakis,* 158 U.S.App.D.C. 162, 485 F.2d 941 (1973), *cert. denied,* 415 U.S. 989 (1974); *United States v. Sutton,* 255 U.S.App.D.C. 307, 801 F.2d 1346 (1986); *United States v. Vasquez*, 675 F.2d 16 (2d Cir, 1982); *United States v. Jamil, 707 F.2d 638 (2d Cir. 1984).* Comment [5] to Rule 4.2 states:

> In circumstances where applicable judicial precedent has approved investigative contacts prior to attachment of the right to counsel, and they are not prohibited by any provision of the United States Constitution or the Virginia Constitution, they should be considered to be authorized by law within the meaning of the Rule. Similarly, communications in civil matters may be considered authorized by law if they have been approved by judicial precedent. This Rule does not prohibit a lawyer from providing advice regarding the legality of an interrogation or the legality of other investigative conduct.

Since government lawyers often rely on investigators to contact persons in the course of an investigation, this excerpt from Comment [1] to Rule 5.3 is also relevant to the discussion:

> The measures employed in supervising nonlawyers should take account of the fact that they do not have legal training and are not subject to professional discipline. At the same time, however, the Rule is not intended to preclude traditionally permissible activity such as misrepresentation by a nonlawyer of one's role in a law enforcement investigation or a housing discrimination "test".

*8. The Rule Does Not Apply to Communications with Former Constituents of a Represented Organization.*

Comment [7] to Rule 4.2 states:

> "[c]onsent of the organization's lawyer is not required for communication with a former constituent."

In LEO 1670, the Committee stated:

> [O]nce an employee who is also a member of the control group separates from the corporate employer by voluntary or involuntary termination, the restrictions upon direct contact cease to exist because the former employee no longer speaks for the corporation or binds it by his or her acts or admissions. In fact, this committee has previously held that it is ethically permissible for an attorney to communicate directly with the former officers, directors and employees of an adverse party unless the attorney is aware that the former employee is represented by counsel. (*See* LE Op. 533, LE Op. 905 and LE Op. 1589). Counsel for the corporation represents the corporate entity and not individual corporate employees. (*See* EC5-18). In the instance where it is necessary to contact unrepresented persons, a lawyer should not undertake to give advice to the person, except to advise them to obtain a lawyer. (*See* EC:7-15).

The *Restatement* provides an explanation:

> Contact with a former employee or agent ordinarily is permitted, even if the person had formerly been within a category of those with whom contact is prohibited. Denial of access to such a person would impede an adversary's search for relevant facts without facilitating the employer's relationship with its counsel.

*Restatement (Third) of the Law Governing Lawyers* § 100 cmt. g (2000).

Although a lawyer may communicate with a former employee, the lawyer may not ask the former employee about any confidential communications the employee had with the organization's counsel while the employee was employed by the organization. Seeking information about confidential communications would impair the organization's confidential relationship with its lawyer and therefore violate Rule 4.4. LEO 1749 (2001). *See also Pruett v. Virginia Health Servs., Inc.*, No. CL03-40, 2005 Va. Cir. LEXIS 151 *(Va. Cir. Ct. Aug. 31, 2005)* (declining to prohibit a plaintiff's lawyer from *ex parte* contacts with any former employees of the defendant nursing home); *Bryant v. Yorktowne Cabinetry Inc.*, 538 F.Supp.2d 948 (W. D. Va. 2008) (holding that Rule 4.2 generally does not prohibit an *ex parte* interview of a represented company's former employee who is not represented by counsel, unless the interviewing lawyer inquires into

matters that involve privileged communications by and between the former employee and the company's counsel related to the subject of the representation).

*9. The Fact that an Organization has In-House or General Counsel Does Not Prohibit Another Lawyer from Communicating Directly with Constituents of the Organization and the Fact that an Organization has Outside Counsel in a Particular Matter Does Not Prohibit Another Lawyer from Communicating Directly with In-House Counsel for the Organization.*

The fact that an organization has a general counsel does not itself prevent another lawyer from communicating directly with the organization's constituents. *SEC v. Lines*, 669 F. Supp. 2d 460 (S.D.N.Y 2009) (neither organization nor president deemed represented by counsel in a particular matter simply because corporation has general counsel); *Humco, Inc. v. Noble*, 31 S.W.3d 916 (2000) (knowledge that corporation has in-house counsel is not actual notice that corporation is represented); Wis. Ethics Op. E-07-01 (2007) (fact that organization has in-house counsel does not make it "represented" in connection with any particular matter).

A lawyer is generally permitted to communicate with a corporate adversary's in-house counsel about a case in which the corporation has hired outside counsel. The purpose of Rule 4.2 is to "protect uncounseled persons against being taken advantage of by opposing counsel" and to preserve the client-lawyer relationship; neither of those dangers is implicated when a lawyer communicates with an organization's in-house counsel. It is unlikely that an in-house lawyer would inadvertently reveal confidential information or be tricked or manipulated into making harmful disclosures or taking harmful action on behalf of the organization, and therefore the lawyer does not need to be protected or shielded from communication with an opposing lawyer. ABA Formal Op. 06-443 (2006); D.C. Ethics Op. 331 (2005).

*10. Plaintiff's Counsel Generally May Communicate Directly with an Insurance Company's Employee/Adjuster After the Insurance Company Has Assigned the Defense of the Insured to Outside or Staff Counsel.*

The question has arisen as to whether Rule 4.2 prohibits a personal injury lawyer from communicating or settling a claim with the insurance company's employee/adjuster once the insurance company has retained counsel to defend the insured. If the insurance adjuster or claims person has authority to offer and accept settlement proposals, that employee would fall within the scope of Comment [7]. Does this mean that the adjuster may be contacted only with the consent of the lawyer hired by the insurance company to defend the insured?

The answer to this question turns upon factual and legal questions that are beyond the purview of the Committee. Virginia is not a direct action state and the insurance company generally is not a named party to a lawsuit against the insured based upon a liability claim.[1] The plaintiff's claim is against the insured, not the insurance company. Whether the defense lawyer hired by the insurance company to defend the insured also represents the insurance company is a legal not an ethics issue. In other words, whether or not an attorney-client relationship exists between defense counsel and the insurer is a legal issue beyond the Committee's purview.

The Committee faced this inquiry in Legal Ethics Opinion 1863 (2012). In the hypothetical, a defendant/insured in a personal injury case is represented by a lawyer provided by his liability insurer. The plaintiff is also represented by a lawyer. The defendant/insured's lawyer has not indicated to the plaintiff's lawyer whether he represents the insurer or only the insured. The plaintiff's lawyer asks whether he may communicate directly with the insurance adjuster, an employee of the insurer, without consent from the defendant/insured's lawyer. The Committee's research indicates that the Supreme Court of Virginia has not had the occasion to address directly the question of whether the insurer is also a client of the defendant/insured's lawyer when that lawyer is provided to the defendant/insured pursuant to his contract of insurance with the insurer.[2] In Unauthorized Practice of Law Opinion 60 (1985) the Court approved this language, suggesting that the only "client" in these circumstances is the insured:

This opinion is restricted to the unauthorized practice of law implications of the question presented and does not attempt to analyze any ethical considerations which might be raised by the inquiry. Staff counsel, in undertaking the representation of the insureds of his or her employer within the guidelines established herein, is clearly bound by the same ethical obligations and constraints imposed on attorneys in private practice. *This includes zealously guarding against any potential erosion, actual or perceived, of the duties of undivided loyalty to the client (the insured)*, independence and confidentiality, to mention on the most obvious areas of potential concern in their relationship. (emphasis added).

Finally insurance carriers, in selecting cases for handling by staff counsel which involve potential excess exposure to the insured, should be aware that the *employer-employee relationship between the insurer and the insured's counsel* carries with it certain risks. The opinions of staff counsel in regard to legal liability, potential verdict ranges, and settlement value and his or her decisions concerning trial preparations and trial strategy will be subjected to unusually close scrutiny and subsequent litigation following any excess verdict. (emphasis added).

As stated above, the creation of an attorney-client relationship is a question of law and fact. Nevertheless, in prior opinions the Committee has addressed the question in order to resolve the ethics inquiry put to it. Legal Ethics Opinion 598 (approved by Supreme Court of Virginia, 1985) ("the client of an insurance carrier's employee attorney is the insured, not the insurance carrier"); *see also* Legal Ethics Opinion 1536 (1993) (stating that insurer is not a client of insurance defense counsel, and that counsel may therefore sue a party insured by the same insurer in a later action without a conflict of interest).

In Legal Ethics Opinion 1863, the Committee stated:

> Although the question of whether an attorney-client relationship exists in a specific case is a question of law and fact, the Committee believes that, based on these authorities, it is not accurate to say that the defendant/insured's lawyer should be presumed to represent the insurer as well. On the other hand, in the absence of a particular conflict, it would be permissible for a single lawyer to represent both the insured and the insurer. If the lawyer is jointly representing both the insured and the insurer, then Rule 4.2 would apply to require the lawyer's consent to any communications between the plaintiff's lawyer and the insurer. Conversely, if the lawyer is not representing the insurer, then Rule 4.2 does not apply and the plaintiff's lawyer is free to communicate with the insurer without the defendant/insured's lawyer's consent/involvement.

Rule 4.2 requires that the plaintiff's counsel *actually know* that defense counsel represents both the insured and insurer. Thus, the Committee concluded in LEO 1863, "unless the plaintiff's lawyer is aware that the defendant/insured's lawyer also represents the insurer, the plaintiff's lawyer may communicate with the insurance adjuster or other employees of the insurer without consent from the defendant/insured's lawyer."

*11. A Lawyer May Communicate Directly with a Represented Person if that Person is Seeking a "Second Opinion" or Replacement Counsel.*

Comment [3] to Rule 4.2 allows a lawyer to communicate with a person seeking a second opinion or replacement counsel concerning the subject of the representation even if a lawyer currently represents that person:

> A lawyer is permitted to communicate with a person represented by counsel without obtaining the consent of the lawyer currently representing that person, if that person is seeking a "second opinion" or replacement counsel.

In Legal Ethics Opinion 369 (1980) the Committee stated that it is not improper for an attorney to give advice of a general nature or express an opinion on a matter to an individual already represented by an attorney on that same matter. The legal right of such individual to select or discharge counsel makes such

general advice "authorized by law." However, it is improper for an attorney to accept employment on that same matter unless the other counsel approves, withdraws, or is discharged.

*12. The Rule Permits Communications that are "Authorized by Law."*

Unfortunately, in most jurisdictions, including Virginia, the precise reach and limits of the "authorized by law" language in Rule 4.2 is not clear. As a starting point, ABA Formal Ethics Op. 95-396 (1995) explains that the "authorized by law" exception in Model Rule 4.2 is satisfied by "constitutional provision, statute or court rule, having the force and effect of law, that expressly allows particular communication to occur in the absence of counsel." ABA Formal Op. 95-396, at 20. Statutes, administrative regulations, and court rules grounded in procedural due process requirements are also a common place to find *ex parte* communications that are "authorized by law."

As Comment *g* to Section 99 of the Restatement (3d) of the Law Governing Lawyers explains:

> Direct communication may occur pursuant to a court order or under the supervision of a court. Thus, a lawyer is authorized by law to interrogate as a witness an opposing represented non-client during the course of a duly noticed deposition or at a trial or other hearing. It may also be appropriate for a tribunal to order transmittal of documents, such as settlement offers, directly to a represented client.
>
> Contractual notice provisions may explicitly provide for notice to be sent to a designated individual. A lawyer's dispatch of such notice directly to the designated non-client, even if represented in the matter, is authorized to comply with legal requirements of the contract.

*See also* LEO 1375 (1990) (opining that the provision of legal notices does not constitute the communication prohibited by DR:7-103).

Therefore, a lawyer may arrange for service of a subpoena, or other process, directly on an opposing party represented by counsel because controlling law or court rule requires that process must be served directly. *See*, e.g., Va. Code § 8.01-314 ("... in any proceeding in which a final decree or order has been entered, service on an attorney shall not be sufficient to constitute personal jurisdiction over a party in any proceeding citing that party for contempt ... unless personal service is also made on the party.").

*See also* LEO 1861 (2012) (Rule 4.2 does not bar a Chapter 13 trustee from communicating with a represented debtor to the extent that the communications are authorized or mandated by the statute requiring the trustee to assist debtor in performance under the plan).

*13. A Lawyer's Inability to Communicate with Opposing Counsel or Reasonable Belief that Opposing Counsel has Withheld or Failed to Communicate Settlement Offers is not a Basis for Direct Communication with a Represented Adversary.*

Sometimes lawyers ask if there are reasonable excuses or justification for bypassing a lawyer and communicating directly with a represented adversary. Generally, the answer is "no." For example, a lawyer's inability to contact opposing counsel and a client's emergency is not a basis for *ex parte* contacts with a represented adversary. LEO 1525 (1993).

In LEO 1323 (1990), the Committee indicated that a prosecutor's belief that defense counsel may not have communicated the plea agreement offer to the defendant does not constitute sufficient reason for an exception. In that opinion, the Committee concluded that the prosecutor violated the no-contact rule by copying the defendant in a letter sent to defense counsel reiterating a plea offer and deadline for acceptance. *See also* Pennsylvania Ethics Op. 88-152 (1988) (concluding that a lawyer may not forward settlement offers to an opposing party even if the opposing counsel failed to notify the client about the offer); Ohio Ethics Op. 92-7, at *1 (1992) (finding it inappropriate for a lawyer to send copies of settlement offers directly to a government agency even if the original is served on the government's attorney).

In LEO 1752 (2001), the Committee said that even if plaintiff's counsel believes insurance defense counsel has failed to advise, or wrongfully withheld information regarding the underinsured client's right to hire personal counsel, plaintiff's counsel may not communicate that advice directly to defense counsel's client.

Approved by the Supreme Court of Virginia
January 6, 2021

1 Unauthorized Practice of Law Opinion 60, approved by the Supreme Court of Virginia in 1985, explains:

> Courts have recognized that a suit against an insurance carrier's insured may in some instances be tantamount to a suit directly against the carrier. In many suits against insured defendants, the carrier's obligation to fully satisfy any judgment is fixed by contract and is unquestioned by the insurer. Such cases, while brought against the insured, are sometimes said to be *de facto* suits against the insurance carrier. Some states permit the insurer to be sued directly by the injured party, and the carrier has been regarded as the "real party in interest" in federal courts interpreting the laws of those states. *Lumbermen's Casualty Company v. Elbert*, 348 U.S. 48, 51 (1954) (diversity of citizenship existed between Louisiana plaintiff and Illinois insurer, even though insured was also a Louisiana resident, since insurance carrier was "real party in interest.").

2 The Committee reviewed a number of decisions in which the question is addressed obliquely in dicta, i.e., the finding of an attorney-client relationship between defense counsel and insurer was not relevant or necessary to the holdings in those cases. *Norman v. Insurance Co. of North America*, 218 Va. 718, 727, 239 S.E.2d 902, 907 (1978) ("**And an insurer's attorney, employed to represent an insured**, is bound by the same high standards which govern all attorneys, and owes the insured the same duty as if he were privately retained by the insured.") (emphasis added). A similar suggestion appears in *State Farm Mutual Automobile Insurance Co. v. Floyd*, 235 Va. 136, 366 S.E.2d 93 (1988) ("**During their representation of both insurer and insured**, attorneys have the duty to convey settlement offers to the insured "that may significantly affect settlement or resolution of the matter." Code of Professional Responsibility, Disciplinary Rule 6-101(D) [DR:6-101]; Ethical Consideration 7-7 [EC:7-7] (1986)") (emphasis added). *But see General Security Insurance Co. v. Jordan, Coyne & Savits, LLP,* 357 F. Supp. 2d 951, 957 (E.D. Va. 2005) ("the Supreme Court of Virginia has never suggested that an insurer, as well as the insured, may be a client of the law firm the insurer retains to defend an insured."). Again, none of the holdings in those opinions turned on whether the attorney and the insurer had an attorney-client relationship.