IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

- - - - - - - - - - - - - - - - - - - -
                                      )
MELINDA SMITH,                        )
                                      )
          Plaintiff,                  )      CIVIL ACTION NO.
                                      )         4:23cv95
     v.                               )
                                      )
ATLAS NORTH AMERICA, LLC,             )
     et al.,                          )
                                      )
          Defendants.                 )
- - - - - - - - - - - - - - - - - - - -

TRANSCRIPT OF PROCEEDINGS
**(Motions Hearing)**

Norfolk, Virginia

July 16, 2025

BEFORE:   THE HONORABLE LAWRENCE R. LEONARD
          United States Magistrate Judge

APPEARANCES:

          BYERS LAW
          By:  Duncan G. Byers
               Counsel for the Plaintiff

          DUNLAP BENNETT & LUDWIG, PLLC
          By:  David M. Trinnes
               Counsel for Atlas North America, LLC

Carol L. Naughton, Official Court Reporter

(Proceedings commenced at 10:58 a.m.)

THE DEPUTY CLERK:  Melinda Smith versus Atlas North America, LLC, Case 4:23cv95.

Is the plaintiff ready to proceed?

MR. BYERS:  The plaintiff is.  Good morning, Your Honor.

THE DEPUTY CLERK:  Is the defendant ready to proceed?

MR. TRINNES:  Yes.  Good morning, Your Honor.

THE COURT:  Good morning, everyone.

This matter is scheduled for three hearings.  They are plaintiff's motion for a finding by the Court that defendant ThyssenKrupp AG has been properly served.  That's ECF 48.  ECF 52 is a motion for sanctions by Atlas North America, LLC.

And, Mr. Ludwig, if you have no objections, I note that you have filed a motion, or a notice, or something, to recognize the name change.  We're just going to call them "Atlas" for our purposes today.  All right?

MR. TRINNES:  That's fine.  And I'm Mr. Trinnes. I'm here for the defendant.

THE COURT:  Oh.  I assumed you were Mr. Ludwig. He's the one who did all the briefing, or at least his name has signed all the briefing.

MR. TRINNES:  His name is signed, but yeah, I was

Carol L. Naughton, Official Court Reporter

involved as well.

THE COURT:  Okay.

And then there is the plaintiff's motion to stay the motion for sanctions until the Court resolves the first motion, which is to find that ThyssenKrupp has been properly served.

So let's start with that motion, Mr. Byers, if you want to come on forward to the podium.

MR. BYERS:  The motion to stay, Your Honor?

THE COURT:  No, sorry, the motion for a finding that ThyssenKrupp has been properly served.

MR. BYERS:  Thank you, Your Honor.

THE COURT:  Well, let me preface where we're going here.  I've reviewed all of the pleadings.  I've reviewed a lot of case law.  And I have a simple question to start out with, Mr. Byers.

MR. BYERS:  Yes, Your Honor.

THE COURT:  Have you actually served process on anyone that you contend is an agent authorized to receive process for ThyssenKrupp?

MR. BYERS:  We have attempted to, Your Honor, as noted in the brief.  ThyssenKrupp AG has trademark registrations in front of the U.S. Patent and Trademark Office, and they had amended those registrations to show a physical address located in Virginia Beach.

We attempted service at that location, and the person that was there refused to accept service and said that ThyssenKrupp AG was not there.

THE COURT: Correct. So, therefore, that would be a no, you didn't get service on them in Virginia Beach.

MR. BYERS: There is no, at this point in time, Your Honor, formal service.

The crux of our argument is that ThyssenKrupp AG, by operation of the rules and by operation of Virginia law, is under sufficient notice that it actually has been served process to the extent that it has sufficient notice to have responded to the suit, at least as early as last summer, and the reason being that, as the Court is aware, we were scheduled for a settlement conference with Judge Krask, and it wasn't until just prior to that that we got discovery that showed, despite Atlas's arguments otherwise, ThyssenKrupp AG in fact was involved in filing the patent application at issue and was the named applicant on it.

THE COURT: See, that's not the issue immediately before me. The issue before me is has ThyssenKrupp AG been served?

MR. BYERS: Not formally, Your Honor. My argument --

THE COURT: That's what you're asking me to find, isn't it -- motion for a finding by the Court that defendant

ThyssenKrupp has been properly served?  Now what are you telling me?  I'm lost here.

MR. BYERS:  Your Honor, the argument is based on the fact that ThyssenKrupp is under notice sufficient to serve as proper service.  When a defendant, especially under Virginia law, has notice of the case sufficient for them to understand the underlying issues and knows that the case is proceeding, the law states that that party is under notice and needs to respond to the case whether or not they have officially been served service of process.

And that would be Virginia statute -- I apologize.

THE COURT:  Well, Mr. Byers, I'm familiar with that. I'm still struggling with the notion -- does your whole argument rely on the fact that ThyssenKrupp AG has notice of the case?

MR. BYERS:  That's correct, Your Honor.

THE COURT:  And the notice is either through who I thought was Mr. Ludwig or through this Rachel Morris down in Florida?

MR. BYERS:  That's correct, Your Honor.

THE COURT:  Can you tell me why you just didn't have a process server serve Ms. Morris if you thought she was an authorized agent to receive service of process on behalf of ThyssenKrupp?

MR. BYERS:  Because in the alternative -- well,

first off, because I sent her the waiver of service of process --

THE COURT:  Which she didn't respond.

MR. BYERS:  She did not respond.  And I was informed by Mr. Trinnes and Mr. Ludwig that she was not -- on behalf of ThyssenKrupp -- that she was not authorized to accept service on behalf of ThyssenKrupp AG.

Given the fact that the information that we have -- it appears that the -- it appears that the location in Virginia Beach was an error of some kind -- I don't know what kind it was -- we certainly are entitled to try to rely upon it -- but she's never responded, and the only person that responded was counsel for Atlas telling me that she was not -- she did not have the authority to accept service of process.

So that leaves me with one option -- well, two options, Your Honor, which is why we're here.  I was trying to avoid the cost and the lengthy process to serve ThyssenKrupp AG in Germany through the Hague Convention, which is expensive and takes a minimum of six to eight months to process.  It's going to cost now over $4,000 just to serve them.

THE COURT:  How much have you spent in attorney's fees to get to this point?  Surely you've incurred more than that.  I know hindsight is 20/20, but if you had just gone

with the Hague Convention last summer, we'd be long past that.

MR. BYERS: I understand that, Your Honor.

THE COURT: Right. So alternatively, why didn't you just have a process server serve Ms. Morris?

You've argued in this case that Atlas is representing ThyssenKrupp; they have denied it -- and I'll get to that with Mr. Trinnes -- but why didn't you -- if you believed that in fact Ms. Morris was an authorized representative to receive service of process, why didn't you just serve her?

MR. BYERS: Because, Your Honor, I was told that she was not authorized to accept service of process on behalf of ThyssenKrupp AG. I started with the waiver that I sent to Ms. Morris. Then I was informed that she was not authorized to accept service of process on behalf of ThyssenKrupp.

THE COURT: And what is Atlas's basis for making representations about who is or isn't authorized to receive service of process on behalf of ThyssenKrupp?

Mr. Ludwig has gone to great lengths to represent that he does not represent ThyssenKrupp. So if he doesn't represent them, how is it any different than if you asked somebody at the front of the building if they can serve it and they gave you an answer?

MR. BYERS: He does represent them, Your Honor.

THE COURT:  He says he doesn't.

MR. BYERS:  I understand that.  But as the Court is aware, in my reply -- that would be Docket 48, and I believe it is --

THE COURT:  Docket 48 is the motion.

MR. BYERS:  That's right.  I'm sorry.  That's the motion.  Exhibit 9 to that, Your Honor, is that LEO opinion from the Virginia Bar, and that was approved by the Virginia Supreme Court, that states specifically once an attorney has made material representations on behalf of a party, a disavow by that attorney after the fact is a nullity.  It's insufficient.  They represent the party.

This Court has already found, at least in part, that they have made arguments on behalf of ThyssenKrupp.  Judge Allen pointed that out in her order in response to my motion to add ThyssenKrupp AG to the case.

One of the arguments that Atlas made, and as I've said throughout the pleadings -- with very few exceptions, all of the arguments that Atlas has made have been for the benefit of ThyssenKrupp AG, not for the benefit of Atlas. ThyssenKrupp AG has never made a special appearance of any kind, has never done anything, because they don't need to, they are arguing through counsel for Atlas.

But in the order granting me leave to amend to add ThyssenKrupp AG -- counsel for Atlas had argued that

ThyssenKrupp AG should not come into the case because there was no privity of contract.

THE COURT: Right. I'm familiar with all that, and we don't need to replough that ground, Mr. Byers.

What I'm trying to drive at is, if you believe that Rachel Morris is authorized to receive service of process because she would be in a position to have sufficient notice to be able to look after ThyssenKrupp's interests, why didn't you just serve her?

MR. BYERS: Your Honor, if it's that simple, I will do that as soon as I get back to the office, but she's going to refuse.

THE COURT: Well, she can refuse, and you know what happens when a defendant refuses service of process; you post it on their door, or you leave it with the office manager --

MR. BYERS: Understood.

THE COURT: -- or whatever. That happens all the time that people want to duck service of process.

MR. BYERS: Understood, Your Honor.

But again, our position is, is that ThyssenKrupp AG is already in the case. All of the arguments that have been made on ThyssenKrupp AG's behalf --

THE COURT: Then wouldn't the proper solution have been for you to move for default when they didn't answer the Amended Complaint, and then somebody on their behalf perhaps

10

comes in and says, well, we were never properly served?

MR. BYERS:  Well, Your Honor, until I get a decision from the Court as to whether or not they actually were under proper notice to serve as proper service under Virginia law, then I don't have a grounds for filing a motion for default. I mean --

THE COURT:  I'll have to disagree with you there, Mr. Byers.  Between my law clerk and I, we have read dozens of cases about what constitutes effective service of process, both under Rule 4 and under the Virginia law.

Are you aware of a single case where the issue was litigated on the front end before the plaintiff contended in response to a 12(b)(5) motion that the defendant had been served and the defendant's motion says they hadn't?

We couldn't find a single case where somebody did it the way you did it, which is to file a motion ahead of time asking the Court to rule on whether service was proper on a defendant who has not made an appearance and has not argued on their own behalf.

MR. BYERS:  Well, Your Honor, the additional issue with regards to service of process on Ms. Morris is that -- again, I went through the steps to avoid the delays, et cetera, and so forth, and costs of --

THE COURT:  But a defendant always has the right not to agree to waiver of service, in which case they can be

Carol L. Naughton, Official Court Reporter

11

responsible for the cost of the process server.

MR. BYERS:  Absolutely, Your Honor.  Absolutely. The issue then arises over Rule 4(m) and the timing, because if the Court believes that Rachel Morris is actually ThyssenKrupp AG's agent and representative here in the United States, then that 90-day time period actually does apply.  If she's not, the 90-day time period does not apply.

So in order to serve her at this point in time -- and I concede the point that I'm unaware of any cases, as you've pointed out -- but in order for us to serve through Ms. Morris, even if she refuses to accept it and we end up getting it duct-taped to the door or whatever, I need the Court to extend the time to serve Ms. Morris.

If the flip side of it is is that the Court is telling me that ThyssenKrupp AG isn't under notice sufficient to serve as process of service and that we need to go through the Hague Convention, then we go and serve through the Hague Convention, and the 90-day period doesn't apply.

THE COURT:  Well, I don't have before me a motion for extension of service.  We'll get to that --

MR. BYERS:  I asked for that, Your Honor.

THE COURT:  -- because we have three motions pending, and I'm just trying to sort out how we got to the point we are today where you're asking the Court to make a finding based on your arguments and not ThyssenKrupp's

Carol L. Naughton, Official Court Reporter

12

arguments.  The only arguments for the other side are from Atlas, who has taken the most aggressive approach I've seen in a long time on someone's behalf other than their own.  I find that very interesting.

MR. BYERS:  Well, Your Honor, I did specifically ask in my motion at Docket 48, in the relief that I sought -- I specifically asked that the Court, in the alternative -- and this is under the request for relief -- I'm sorry, these got misnumbered.  It should be item --

THE COURT:  That's all right.  I'm aware, Mr. Byers, that you've asked alternatively that the Court extend the time for service.

MR. BYERS:  Yes, Your Honor.

THE COURT:  I'm just trying to figure out how we got to where we are and what -- where we should go from here.

Well, what I want to do, unless you've got something further you want to offer, I do want to talk to Mr. Trinnes, and then the other two motions, I'm setting them aside while we deal with this issue.

MR. BYERS:  I understand, Your Honor.  I have nothing further unless you have any further questions for me.

THE COURT:  That's all for now.

All right.  Mr. Trinnes, let's start with a simple question.  Do you represent ThyssenKrupp AG?

MR. TRINNES:  No, Your Honor.

Carol L. Naughton, Official Court Reporter

13

THE COURT:  Then by what legal rationale do you have to argue on their behalf and to make representations on their behalf and to submit a declaration on their behalf?

MR. TRINNES:  Your Honor, the only arguments we made were to oppose a joinder motion because we simply want to move this case along.  My client wants to not be involved in this matter anymore.  My client wants to conduct discovery, potentially file a motion for summary judgment.

The case has been on hold since last September.  So adding another defendant and waiting another six to eight months for the Hague Convention to be complied with is going to delay the case even more.  So --

THE COURT:  I have an alternative for you, Mr. Trinnes.  How about you just talk to ThyssenKrupp and say go ahead and let us accept service on your behalf or let Ms. Morris accept service on your behalf?

MR. TRINNES:  We --

THE COURT:  Wouldn't that have expedited matters for you and your client?

MR. TRINNES:  Your Honor, ThyssenKrupp will not accept service -- will not let us accept service on behalf --

THE COURT:  Now, here you are, you're making representations on behalf of ThyssenKrupp, and you just told me you don't represent ThyssenKrupp.  How does that work, Mr. Trinnes?

Carol L. Naughton, Official Court Reporter

14

MR. TRINNES:  Well, Your Honor, if we were representing ThyssenKrupp, there's potentially a conflict of interest between the two parties in the case.  I mean, it's more important that they have their own counsel but --

THE COURT:  That's not true.  It's true in a criminal case, but there's not a conflict to represent more than one defendant.  We see it all the time.

MR. TRINNES:  Well, one of the defendants could be found more liable than the other, Your Honor.

THE COURT:  If it's a conflict of interest, why are you making arguments on ThyssenKrupp's behalf?

MR. TRINNES:  Well, Your Honor, we are opposing the joinder motion on the basis of futility, it's a factor, and no authority requires us to show our client is placed in legal jeopardy by making arguments.

THE COURT:  Are you aware of any case under Rule 4 where the argument against proper service of process was made by someone other than the defendant who was purported to be served?  Can you point me to a single case, similar here, where a party in the case is making arguments on behalf of someone who is not in the case, a third party?

MR. TRINNES:  No, Your Honor, but I think -- I believe we've also agreed there's nothing vice versa as well.

THE COURT:  What do you mean "vice versa as well"?

MR. TRINNES:  There's no case allowing -- there's no

15

case that has had a motion on the front end ruling a service improper on another party.

THE COURT: I know. That's what I find remarkable, that I've got a motion to find service proper on the front end, because every case I've seen deals with this under Rule 12(b)(5), a claim of improper service of process, and it's always made by the person or the company against whom process was sought to be made.

This is a first, I grant you that. But I've also never seen lawyers argue so vehemently and with such intemperate language in their pleadings. I don't know if you wrote them or Mr. Ludwig wrote them, but I find it wholly inappropriate and unprofessional to use some of the language that I read in those opinions.

I don't know how often you practice in this court, Mr. Trinnes, but that doesn't fly here, and it certainly doesn't impress, and if anything, it hurts your case because it's got me thinking why in the world does Atlas care so much to use such strident language and make such aggressive arguments on behalf of someone they do not represent?

MR. TRINNES: Your Honor, part of it was plaintiff being aggressive and accusing our office, attorneys for Atlas, as accepting the service on behalf of another party and making these strange --

THE COURT: Wait a minute. Accusing Attorney Morris

Carol L. Naughton, Official Court Reporter

16

of accepting service, that's unprofessional?

MR. TRINNES: Your Honor, our office, the office of Dunlap Bennett & Ludwig.

THE COURT: Okay. Accusing your office -- you mean asserting that you should be considered to have accepted service because you have notice, i.e., ThyssenKrupp has notice.

MR. TRINNES: And alleged that we made representations on behalf of ThyssenKrupp just by passing along a message that they will not accept service, Your Honor, that's --

THE COURT: That's another thing, "passing along a message." So if they had -- ThyssenKrupp had stopped somebody in the street and said, hey, would you go into court and pass along a message for us, that that's supposed to have some type of gravitas with the Court -- your passing along a message? Are they paying you?

MR. TRINNES: Atlas is, Your Honor.

THE COURT: Is ThyssenKrupp paying anything towards your legal fees in this case?

MR. TRINNES: Not that I'm aware of.

THE COURT: I'll tell you, Mr. Trinnes, I am very disturbed by the role that you and Mr. Ludwig are playing on behalf of someone you insist you do not represent. And it seems to the Court that there is quite a bit of gamesmanship

Carol L. Naughton, Official Court Reporter

17

going on, that Mr. Byers is trying to effect service of process and is being dodged at every turn.

He didn't make up the fact that this trademark registration showed an address in Virginia Beach. And I know exactly where that address is. That was nothing bad faith in attempting to serve ThyssenKrupp at that address.

MR. TRINNES: Your Honor, I'm not arguing that.

THE COURT: Well, you're arguing that his attempt to serve Ms. Morris was in bad faith. And I've got Ms. Morris's LinkedIn page here. She is quite proud of the fact that she is senior counsel for ThyssenKrupp in employment and litigation, and has been since July of 2022. And yet, she's identified in one of your pleadings as being acting general counsel for Atlas, which I find very interesting.

How long has she been acting general counsel at Atlas?

MR. TRINNES: I'm not aware of a timeline, Your Honor. As long as we've been in this case.

THE COURT: Is she still acting general counsel for Atlas?

MR. TRINNES: Yes, Your Honor.

If I may also add, the only reason Ms. Morris's name is even in these pleadings right now is we named her as potentially attending a settlement conference last year, and in that settlement conference order, it was ordered that all

Carol L. Naughton, Official Court Reporter

information exchanged needs to be kept confidential and not used.  And we've never held her out in any other manner.  It was in a confidential settlement brief that we provided to counsel to prepare for the settlement conference.

THE COURT:  Okay.  And that's relevant how?

MR. TRINNES:  We've never held her out in any other capacity.  All our pleadings --

THE COURT:  She held herself out, at least if you believe LinkedIn.  I'm not on social media, so I need help with that kind of thing, but I'm looking at her LinkedIn page.  Have you looked at her LinkedIn page?

MR. TRINNES:  I've seen what counsel's filed with his motion, Your Honor.

THE COURT:  Do you know her to be senior counsel for employment and litigation at ThyssenKrupp since July of 2022?

MR. TRINNES:  I am not aware, Your Honor.  She's held herself out to me as counsel for Atlas.

THE COURT:  Did you even know she was connected to ThyssenKrupp or at least is advertising herself as being connected to ThyssenKrupp?

MR. TRINNES:  I guess I never asked, Your Honor, but I've only dealt with her in the context of Atlas.

THE COURT:  It's interesting she doesn't include Atlas on her LinkedIn page.  She's got her other positions.  She was an attorney at Sessions, Israel & Shartle; she was an

19

associate at Ogletree Deakins; an attorney at Sessions Fishman, Nathan, & Israel.  She seems to have -- she was a judicial intern in the Second District Court of Appeals and a judicial intern in the United States District Court for the Middle District of Florida for Judge Whittemore, and a legal intern in the United States Attorney's office.

She's got every position she's ever had on here, and yet she doesn't have acting general counsel of Atlas.  I find that interesting.  Don't you find that interesting?

MR. TRINNES:  Your Honor, it's still hearsay.  I don't know much about her LinkedIn page.

THE COURT:  All right.  Well, the Court, in my judgment, is handicapped because of the posture that this case is in; that the plaintiff is seeking to have service of process found to be effective without an argument from the actual party against whom service was sought.

Instead, I'm getting parties by -- an argument by proxy from another defendant who, under ordinary circumstances, the Court would think, gee, if there's a co-defendant here who might help bear the load in terms of defending the case and maybe paying any judgment -- if there happens to be an adverse judgment -- that would be a good thing.

But you all have fought like heck to keep out somebody you don't represent and somebody who clearly doesn't

Carol L. Naughton, Official Court Reporter

20

want to be served in this case, at least that's the way it appears.  And the argument that it's simply to avoid delay could have been obviated last summer if you had simply reached out to ThyssenKrupp.  I mean, you've got a declaration from somebody, which again I find interesting, who says -- Mr. Sergio Diehl, who says he is president for Atlas, and based on the nature of his role and previous interactions with ThyssenKrupp AG, "I am familiar with the company."

Well, I suppose you could have gone to Mr. Diehl, who is the president of your client, and said, hey, we can get this case wrapped up a lot quicker if you just go ahead and accept service of process, especially if they claim they don't have any role, although how they explain their name on the application for the patent, I guess we'll find out.

But I'm finding this whole thing very curious, Mr. Trinnes.  And I'm sorry Mr. Ludwig isn't here because I would have liked to have shared my thoughts with him.

Anything else you want to argue?

MR. TRINNES:  No, Your Honor.

THE COURT:  All right.  Well, there's also pending a motion for sanctions, and in the motion for sanctions, Atlas seeks, among other things, dismissal of the case.  As a Magistrate Judge, I'm not authorized to grant or deny such a request.  All I can do is make a report and recommendation.

Carol L. Naughton, Official Court Reporter

There is also a motion by the plaintiff to stay the motion for sanctions until the Court rules on the motion to find service of process was proper.

So here's how I'm going to handle this.  I'm going to deny plaintiff's motion that ThyssenKrupp was properly served.  I'm going to grant their request for alternative relief for them to try to obtain proper service of process.

Now, I make no judgment as to whether or not service of Ms. Morris is effective service on ThyssenKrupp.  The Hague Convention is there for a reason, and I leave it to the plaintiff to determine which manner of service they think is proper and is best here.

Once ThyssenKrupp is in the case, one way or the other, then they can come in and argue under a 12(b)(5) motion that service was not properly effectuated.  But without their arguments and their explanation of what authority or apparent authority their various agents in the United States have, the Court is not in a position to determine that service has been proper.

For instance, I don't know enough about what Ms. Morris does to know if she is an appropriate agent to receive service of process.  After all, she's senior counsel for employment and litigation, and while this is litigation, it's not employment litigation.  So there's simply not a basis to find that there has been proper service.

Carol L. Naughton, Official Court Reporter

22

But that said, I think Mr. Byers has been getting the runaround for quite some time now, and I think he's entitled to another shot to effectuate service of process. Again, it will be on Mr. Byers to determine what is the best way to accomplish that.

Once either he decides to have Ms. Morris served or he decides to have the Hague Convention utilized, then we will go from there to see whether or not ThyssenKrupp is a proper defendant.

Now, that said, it's a lot quicker to serve process on somebody in the United States than to go through the Hague Convention. So what I'm going to do is I'm going to extend the time to serve process another 90 days.

If ThyssenKrupp has not been served or if Mr. Byers elects -- which if he wants to, the Court is not going to object to him electing to go through the Hague Convention -- then he should notify the Court that he may need more than 90 days.

In other words, if -- I don't know that the Hague Convention always takes four to six months to effectuate service. In my experience, sometimes it happens a lot quicker than that.

So I'm going to extend the time 90 days. Mr. Byers, if you want to go with Rachel Morris, then you will file the return of service. If you want to go through the Hague

Carol L. Naughton, Official Court Reporter

23

Convention, then you should file it promptly and then keep the Court apprised before the expiration of the 90 days as to what the status of that is.

But the Court has previously found that ThyssenKrupp can be named as an additional defendant in this case. And certainly, they have some presence in the United States because otherwise they wouldn't have a general counsel down in Florida.

Now, with respect to the motion for sanctions, I'm going to issue a report and recommendation that denies the motion for sanctions on the basis that I don't think there's any support for bad faith on the part of the plaintiff, and I think, if anything, somebody on the defense side -- whether it's ThyssenKrupp pulling the strings or whether it's you pulling the strings -- I don't think there was a reasonable basis for seeking sanctions under these circumstances, especially given the delay with which -- or I should say the alternative route, which is to allow and encourage ThyssenKrupp to accept service so the case could get resolved.

With respect to the motion to stay, that motion is going to be moot based on my report and recommendation on the motion for sanctions.

Under the rules, the defendant has 14 days to object to my order, and it has 14 days to object to my report and

Carol L. Naughton, Official Court Reporter

24

recommendation.  Those are two different things, and they are two different standards.  So you all can take that into consideration.

But that's how I'm going to rule on this case.  It needs to get back on track.  And hopefully, I'll -- I'm not going to counsel you one way or the other, Mr. Trinnes, about whether you ought to or should object to my report and recommendation.

But if you do object, you have 14 days to do so. Mr. Byers then has 14 days to file a response to that.  So if you're concerned about delay, you might want to take into consideration the length of time resolving that will be.  But I leave that to you.  That's your legal judgment on behalf of Atlas since that's who you represent.

All right.  Mr. Byers, anything further from the plaintiff?

MR. BYERS:  I do want to clarify one thing, Your Honor, with regards to my representation to the Court in pleadings that Ms. Morris was identified as an individual who would be attending the settlement conference.

I did a very, very deep dive on the issue of what I could represent to the Court and what I could not represent to the Court before I made the decision to do that, and I was also very cautious by not including even a redacted version of the settlement position statement to the Court simply

Carol L. Naughton, Official Court Reporter

because of those concerns.

But I did find that it was permissible to let the Court know who was identified to attend the settlement conference and in what capacity and felt that it was important that the Court know that she was identified as somebody who was going to be attending as a representative and unexplained -- without any explanation as to who she was representing or not representing.

And it was also not until I attempted to get Ms. Morris to accept the waiver of service that I was then informed that she was in-house counsel for ThyssenKrupp, which the Court should also be aware, doesn't change anything. I'm entitled under the rules and under the rules of -- the ethical rules to communicate with her directly, and they cannot interfere with that.

So that was the whole point behind it, Your Honor. I wanted to make sure I clarified that; that it was a considered decision and I spent quite some time going through it to make sure that I was right on what I informed the Court.

THE COURT: All right. Very well.

MR. TRINNES: May I briefly respond to that? In plaintiff's motion, they assert that Ms. Morris attended a scheduling -- a scheduling conference for a settlement conference, and she did not actually attend that scheduling

conference.  It was between counsel for the parties.  She was not present, Your Honor.

THE COURT:  Was there actually a settlement conference or just a telephone conference with Judge Krask?

MR. TRINNES:  A scheduling phone call, Your Honor.

THE COURT:  So you haven't officially had a settlement conference?

MR. TRINNES:  No, Your Honor.

THE COURT:  But you submitted settlement memoranda?

MR. TRINNES:  Yes.

THE COURT:  All right.

MR. BYERS:  Your Honor, to be clear, it was -- and I noted this in my pleadings -- that my assertion that she was on the conference call was based upon my recollection that she was identified to Judge Krask.  I attempted to verify that.  I got no response, and so I didn't follow up on that.

However, I will say this, that if she was identified, she's a practicing attorney in Florida, and we had the telephone conference to determine whether or not the settlement conference was going to go forward and, if so, when, where, and how.

And so I find it improbable that she was not on that call because her schedule would have to be taken into consideration when setting the settlement conference.  But I could be completely wrong.  I have to take them at face

Carol L. Naughton, Official Court Reporter

value.

The only reason that I added it, Your Honor, is, again, for purposes of showing her relationship to the case. And I could be absolutely wrong; she may not have been on the call.

THE COURT:  Well, that particular issue is not before the Court.  I understand this is of a piece with the accusations being hurled about, and all I can tell you is, since I'm not making any determination that service was proper, right now that's of no relevance to the issue about obtaining service of process.

MR. BYERS:  Understood, Your Honor.

THE COURT:  I understand that you made a representation, that the defendant took great exception to it, but that's neither here nor there for the moment.

MR. BYERS:  Understood, Your Honor.  Thank you.

THE COURT:  All right.  Anything further?

MR. TRINNES:  Nothing further, Your Honor.  Thank you.

THE COURT:  The Court will stand in recess.

(Proceedings adjourned at 11:36 a.m.)

Carol L. Naughton, Official Court Reporter

<u>CERTIFICATION</u>

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____/s/_____

Carol L. Naughton

September 8, 2025

Carol L. Naughton, Official Court Reporter